**STATE**

v.

**Joseph STRAVATO.**

**Nos. 2005–101–CA, 2004–315–CA.**

Supreme Court of Rhode Island.

Dec. 7, 2007.

Seth A. Perlmutter, Esq., for Plaintiff.

Lauren S. Zurier, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice SUTTELL, for the Court.

The defendant, Joseph Stravato, appeals from a judgment of conviction on three counts of second-degree child molestation. Although the defendant raises several grounds for appeal, we find the issue of the state's discovery violation to be dispositive. For the reasons set forth in this opinion, we vacate the judgment of conviction and remand the case to the Superior Court for a new trial.

## I

### Facts and Procedural History

On November 29, 2002, the state charged defendant with the second-degree child molestation of his former stepdaughter, Jane.[1] The state alleged three counts: breast contact, vaginal contact, and contact with defendant's genitals, all in violation of G.L.1956 §§ 11–37–8.3 and 11–37–8.4, which prohibit sexual contact with a person fourteen years of age or under.

The defendant was tried in the Superior Court in October and November 2003.

For the purposes of resolving this appeal, we need not recount the lurid details of Jane's testimony. Suffice it to say she testified to a series of sexual encounters with defendant over a two-year period, beginning when she was eleven years old. Jane was twenty years old at the time of trial.

Jane testified that she kept the molestations secret for many years, largely because she was afraid no one would believe her and also because she did not want to disrupt her family. In September 2002, however, Jane learned that her mother was unhappy in her relationship with defendant, and she devised a plan to give her mother a good reason to leave the marriage. Jane purchased a digital recorder and planned to confront defendant about the molestations while secretly recording the conversation. On the morning of September 18, 2002, Jane told her mother about defendant's abusive conduct. Later that day, with her mother present, Jane confronted defendant about the molestations while surreptitiously recording the conversation.

A few weeks after the recorded confrontation, Jane gave a written statement to the Rhode Island State Police and presented the digital recording to two state troopers. The state subsequently charged defendant with three counts of child molestation. At trial, the state relied principally on Jane's testimony.

At the end of the state's case, defendant moved for judgment of acquittal and also moved to exclude the digital recorder and tape recordings of his conversation with Jane from evidence. The trial justice denied both motions. Subsequently, defendant, the only witness to testify for the defense, denied all the sexual-misconduct allegations.

---

1. In conformance with our customary practice, we identify the complaining witness, a child at the time of the alleged molestation, by use of a fictitious name.

The jury returned guilty verdicts on all three counts. Soon thereafter, defendant filed a motion for a new trial, asking the trial justice to set aside the conviction because Jane's testimony was unworthy of belief. The trial justice denied the motion on December 9, 2003. The defendant filed a second motion for a new trial, asserting that the state had violated defendant's constitutional and procedural rights and had committed prosecutorial misconduct by failing to disclose Jane's medical records and one of her written statements. The trial justice denied defendant's second motion, and the judgment of conviction was entered on June 22, 2004, from which defendant timely appealed.

On appeal, defendant raises a litany of perceived errors that he argues warrant the reversal of his conviction. The defendant says the trial justice committed reversible error by: denying defendant's second motion for a new trial based on the state's nondisclosure of key evidence during discovery; allowing a digital recording into evidence without establishing a sufficient chain of custody; violating defendant's confrontation rights by allowing evidence outside the record to reach the jury; precluding cross-examination of the state's witnesses on several topics; and by making several evidentiary determinations that constitute abuses of judicial discretion. Because we find the issue of the state's discovery violation dispositive, we do not address defendant's remaining legal theories.[2]

## II

## Discussion

The defendant argues that the state's nondisclosure of evidence rises to the level of a deliberate discovery violation of Rule 16 of the Superior Court Rules of Criminal Procedure, thus warranting a reversal of the conviction and a new trial. We agree. At the outset, we note that "Rhode Island has adopted one of the most liberal discovery mechanisms in the United States." *State v. Oster*, 922 A.2d 151, 163 (R.I.2007) (quoting *State v. McParlin*, 422 A.2d 742, 745 (R.I.1980)). The Superior Court promulgated Rule 16 in 1972, which substantially altered previous criminal discovery procedures. *State v. Coelho*, 454 A.2d 241, 244 (R.I.1982). "In our adversary system, based as it is upon a single trial held on a single occasion, it is imperative that the defense come to trial as well equipped as possible to raise reasonable doubt in the minds of one or more of the jurors." *State v. Concannon*, 457 A.2d 1350, 1352–53 (R.I. 1983). Rule 16 attempts to ensure that both parties receive the fullest possible presentation of facts before trial. *Concannon*, 457 A.2d at 1353. Its overall purpose is to "contribute to the fair and efficient administration of criminal justice by aiding in informed plea negotiations, by minimizing the undesirable effect of surprise at trial, and by otherwise contributing to an accurate determination of the issue of guilt or innocence." *Coelho*, 454 A.2d at 244 (quoting Fed.R.Crim.P. 16 advisory comm. note); *see also State v. Briggs*, 886 A.2d 735, 754 (R.I.2005) (quoting *State v. Gordon*, 880 A.2d 825, 832 (R.I.2005) ("The overarching purpose of Rule 16 is 'to ensure that criminal trials are fundamentally fair.' ")).

Rule 16 is designed "to eliminate surprise and procedural prejudice." *State v. Boucher*, 542 A.2d 236, 241 (R.I.1988).

2. Although we discuss only the violation of Rule 16 of the Superior Court Rules of Criminal Procedure in this opinion, we are satisfied that defendant's remaining arguments are without merit.

"Failure to cooperate with the spirit and letter of Rule 16 undermines the judicial process and subjects the noncompliant party to possible sanctioning." *State v. Ramos*, 553 A.2d 1059, 1067 (R.I.1989).

### A. Standard of Review

■ When this Court reviews a determination of whether a violation of Rule 16 occurred, "the applicable standard [of review] is narrow: the trial justice must have committed clear error." *Briggs*, 886 A.2d at 755 (citing *State v. Rice*, 755 A.2d 137, 151 (R.I.2000)); *see also State v. Motyka*, 893 A.2d 267, 280 (R.I.2006) (defining standard of review as "clearly erroneous"). The imposition of a particular sanction for noncompliance with discovery obligations rests within the sound discretion of the trial justice, and his or her ruling will not be overturned absent a clear abuse of discretion. *State v. Verlaque*, 465 A.2d 207, 213 (R.I.1983). The trial justice's discretion under Rule 16 is not a blank check, however, rather "[it] is limited, bounded by law, and reviewable." *Oster*, 922 A.2d at 163 (quoting *Coelho*, 454 A.2d at 245).

■ A trial justice examines four factors when considering a proper sanction for nondisclosure of discovery material: "(1) the reason for nondisclosure, (2) the extent of prejudice to the opposing party, (3) the feasibility of rectifying that prejudice by a continuance, and (4) any other relevant factors." *Coelho*, 454 A.2d at 245. The first *Coelho* factor, the reason for the nondisclosure, can be dispositive. *State v. Brisson*, 619 A.2d 1099, 1102 (R.I.1993). When the state's nondisclosure is deliberate, the defendant is entitled to a new trial, and no inquiry is needed into the presence of the other three factors. *State v. Wyche*,

518 A.2d 907, 911 (R.I.1986). In deliberate nondisclosure cases, prejudice to the other party is presumed. *State v. Vocatura*, 922 A.2d 110, 118 (R.I.2007).

### B. Rule 16 Discovery Violation

■ In the case under review, defendant filed two separate requests for information. The first included a standard Rule 16 discovery request for a copy of all written statements by potential witnesses. On the day of jury impanelment, defendant also filed a "Motion for Exculpatory Evidence," relying upon *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny. In response to defendant's Rule 16 discovery request, the state turned over a copy of Jane's ten-page verbatim statement given to the Rhode Island State Police, and a copy of the State Police's report that summarized her witness statement. The state also produced a tape recording and transcript of the confrontation between Jane and defendant. The state, however, did not disclose Jane's victim-impact statement, at least six pages of which Jane had authored before trial.[3]

Under article 1, section 23, of the Rhode Island Constitution "a victim [of a crime] shall have the right to address the court regarding the impact which the perpetrator's conduct has had upon the victim." The Victim's Bill of Rights, originally enacted by the General Assembly in 1983, also provides certain rights to victims of criminal offenses. *See* G.L.1956 chapter 28 of title 12. One such right inhering in victims is "[t]o be afforded the opportunity to make a statement, in writing and signed, regarding the impact which the defendant's criminal conduct had upon the victim." Section 12–28–3(a)(14).[4] Any

---

**3.** The trial justice found that Jane wrote six pages of the victim-impact statement before trial and three additional pages after trial.

**4.** General Laws 1956 § 12–28–3 reads in pertinent part:

"(a) Each victim of a criminal offense who makes a timely report of the crime and

such statement must be presented to the trial court before the acceptance of a plea negotiation.[5] *Id.; see also* § 12–28–3(a)(10) (giving victims the right to be consulted by a probation officer and to include a statement on the impact of the defendant's conduct on the victim in a presentence report).

Shortly before the trial commenced, the state represented to defense counsel and the trial justice that it had fully complied with defendant's requests for discovery. The following colloquy occurred between the state and the trial justice on the day of jury impanelment:

"THE COURT: Defendant's motion for exculpatory evidence, even though I have not studied it, I assume that the State does not have an objection. The State knows what it has to provide under constitutional law and case authority, and the State has a continued obligation to do that right through the end of the trial, even beyond the end of the trial, I would submit.

"[THE STATE]: Yes, Your Honor. Everything right now, just for the record, everything that the State has right now, the defendant has. Nothing new has come into my possession. If it does, I will certainly turn it over if it's relevant to this case and discoverable.

"THE COURT: This really doesn't relate only to discoverable matters, but it relates to exculpatory matters; and I'm sure you, as all good prosecutors do, err on the side of disclosure. If there's ever a question as to what to do, you can always file in camera."

Later at trial, while discussing a specific discovery matter, the prosecutor stated, "Your Honor, I take exception to [defense counsel] saying that this is a trial by ambush. * * * The State has provided everything that the State knew, that it had."

After the trial concluded, defendant learned of the existence of the victim-impact statement. The defendant's second motion for a new trial argued in part that the state's failure to disclose the statement violated Rule 16. The trial justice denied the motion, finding that the state did not make an intentional decision to withhold relevant information contained in the victim-impact statement. The trial justice noted the state's "dangerous policy" of not routinely disclosing victim-impact statements obtained before trial,[6] but he found that the state did not intentionally withhold information contained in the victim-impact statement because the relevant material had been disclosed through other means. The court determined that the

---

who cooperates with law enforcement authorities in the investigation and prosecution of the offense shall have the following rights:

"* * *

"(14) To be afforded the opportunity to make a statement, in writing and signed, regarding the impact which the defendant's criminal conduct had upon the victim. The statement shall be inserted into the case file maintained by the attorney general or prosecutor and shall be presented to the court for its review prior to the acceptance of any plea negotiation. The statement shall be submitted to the parole board for inclusion in its records regarding the defendant's conduct against the victim[.]"

5. The state asserts that, because defendants who agree to enter plea negotiations waive their right to a presentence report, the state cannot rely upon the presentencing process for the creation of victim-impact statements. According to its brief in this case, the state, as a matter of policy, asks complainants to prepare victim-impact statements after arraignment.

6. The trial justice granted defendant bail pending appeal, explaining that the state's failure to disclose the victim-impact statement is a "significant [issue of law] and one I hope does reach our State Supreme Court."

state's prosecution team had a good-faith belief that they had complied with defendant's discovery requests. The trial justice found that the state did not believe that disclosure of the victim-impact statement was required. He also noted that the state represented to the court that it reviewed the victim-impact statement before trial and determined it "not to contain any information not already made part of other discovery."

Before this Court, the state acknowledges that "the prosecutor in this case deliberately withheld the [victim-impact statement,]" contending that "she did *not* do so 'for the purpose of obstructing,' but simply because in good faith she did not believe" that Rule 16 required its production. From the state's viewpoint, it did not need to disclose the victim-impact statement because it determined, and the trial justice agreed, that the statement as it existed before trial did not contain any information not otherwise disclosed.

Rule 16 states in pertinent part:

"(a) *Discovery by Defendant.* Upon written request by a defendant, the attorney for the State shall permit the defendant to inspect or listen to and copy or photograph any of the following items within the possession, custody, or control of the State, the existence of which is known, or by the exercise of due diligence may become known to the attorney for the State:

" * * *

"(8) as to those persons whom the State expects to call as witnesses at the trial * * * all written or recorded verbatim statements, signed or unsigned, of such persons and, if no such testimony or statement of a witness is in the possession of the State, a summary of the testimony such person is expected to give at the trial[.]

" * * *

"(i) *Failure to Comply.* If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, it may order such party to provide the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material which or testimony of a witness whose identity or statement were not disclosed, or it may enter such other order as it deems appropriate."

This Court has defined a deliberate nondisclosure under Rule 16 as " 'a considered decision to suppress * * * for the purpose of obstructing' or where [the prosecution] fails 'to disclose evidence whose high value to the defense could not have escaped * * * [its] attention.' " *Wyche,* 518 A.2d at 910 (quoting *United States v. Keogh,* 391 F.2d 138, 146–47 (2d Cir.1968)); *see also State v. Ibrahim,* 862 A.2d 787, 799 (R.I.2004); *Brisson,* 619 A.2d at 1103.

■ As previously noted, if the state's nondisclosure is deliberate, neither the trial justice nor we need examine the remaining prongs of the *Coelho* test; prejudice is presumed and the defendant is entitled to a new trial. Such an outcome recognizes that the purpose of Rule 16 "is to ferret out *procedural,* rather than *substantive,* prejudice." *Coelho,* 454 A.2d at 245; *see also Boucher,* 542 A.2d at 241. A defendant is automatically prejudiced when the state deliberately evades its procedural obligations required by Rule 16. *See Vocatura,* 922 A.2d at 118 (quoting *State v. Morejon,* 603 A.2d 730, 735 (R.I.1992) ("[W]e have held that in situations in which the record indicates a deliberate nondisclosure, a new trial will be granted without inquiring into the degree of harm caused by the misconduct.")). Stated another way, the state's deliberate nondisclosure of evidence

properly requested under Rule 16 *is* the prejudice.

This Court has often stated that Rule 16 "sets forth in clear and unambiguous language the state's responsibilities." *Oster,* 922 A.2d at 164. In *Verlaque,* defense counsel made a Rule 16 discovery request for a written list of the names the state expected to call at trial. The state responded by not providing a list of names as requested; instead, it instructed defense counsel to "see attached list of names in report." *Verlaque,* 465 A.2d at 212. The defendant made a motion to compel an actual list of the witnesses the state intended to call at trial; the state argued in response that it had already complied by providing the defendant with statements and police reports within which the defendant could find the names and addresses of witnesses. *Id.* The trial justice rejected the state's argument and ordered the prosecutor to provide the witness list as requested. *Id.* On the eve of trial, the state produced a list of fifty-three names, but at trial the prosecutor called only fifteen of the potential witnesses. *Id.* at 212–13.

The *Verlaque* Court concluded that the prosecutor deliberately failed to follow both the letter and spirit of Rule 16:

> "*The language of Rule 16 is very clear.* The prosecutor must provide a defendant with specific information when requested. *The prosecutor does not have the authority to interpret the rule and decide what constitutes substantial compliance or equivalent compliance.* Rule 16(a)(6) requires the attorney for the state to provide a list of witnesses, not what the prosecutor

thinks is the functional equivalent of a list. The prosecutor should have provided the list when it was originally requested. The list should have named the people *he* expected to call as witnesses. A list of witnesses means just that—the people who will testify at trial. * * * Because we conclude that the prosecutor deliberately failed to comply with Rule 16, it is unnecessary to consider whether or not Verlaque suffered procedural prejudice as a result of the noncompliance." *Verlaque,* 465 A.2d at 214 (emphases added).

Similarly, in *State v. Adams,* 481 A.2d 718, 723 (R.I.1984), defense counsel made a Rule 16 discovery request for scientific reports and related tangible evidence. After receiving the request, the state failed to disclose a doctor's report and tangible evidence connected with the report. *Adams,* 481 A.2d at 723. The state argued that it did not commit a Rule 16 violation because the defendant learned of the tangible evidence in question well before trial through other means, and that since the prosecutor never intended to call the doctor as a witness, the doctor's report was outside the scope of Rule 16. *Adams,* 481 A.2d at 723. The *Adams* Court found that the doctor's report was a report of a physical examination within the ambit of Rule 16[7] and noted that Rule 16 does not make disclosure of physical examination records contingent upon whether the state intends to use it at trial. *Adams,* 481 A.2d at 724. The Court reasoned that such an interpretation would clearly defeat the letter and spirit of Rule 16, and that the prosecutor was "absolutely without authority" to interpret Rule 16 in such a way to

7. Rule 16(a)(5) of the Superior Court Rules of Criminal Procedure makes discoverable "all results or reports in writing, or copies thereof, of physical or mental examinations, and of scientific tests or experiments made in connection with the particular case and, subject to an appropriate protective order * * * any tangible objects still in existence that were the subject of such tests or experiments[.]"

exclude disclosure of the doctor's report. *Adams,* 481 A.2d at 724; *see also Coelho,* 454 A.2d at 245 (rejecting similar argument). *Adams* concluded that the prosecutor's improper interpretation of Rule 16, resulting in the nondisclosure of the doctor's report, was deliberate. *Adams,* 481 A.2d at 724; *see also Vocatura,* 922 A.2d at 119 (affirming the trial justice's finding of deliberate nondisclosure, where defense counsel had information that contradicted the language of his discovery response but chose not to reveal that information in a timely manner).

Rule 16(a)(8) provides that the state, upon request by a defendant, must provide "all written or recorded verbatim statements, signed or unsigned, of such persons" whom the state expects to call as witnesses at trial. Here, based on Rule 16, defendant requested copies of all written statements by potential witnesses. Similar to *Adams,* in which the doctor's report fell squarely within the plain language of Rule 16, Jane's victim-impact statement is clearly a written statement by a witness whom the state expected to call at trial. We also are mindful that this was a written statement of the complaining witness, whose credibility was crucial and hotly contested. Disclosure of written statements by witnesses does not turn on whether the state intends to introduce the statements at trial. Further, as in *Verlaque,* the state cannot evade a proper Rule 16 discovery request by providing defendant with similar information found in other sources. The state must follow Rule 16's clear command and disclose properly requested evidence in a timely manner. *State v. Gonzalez,* 923 A.2d 1282, 1286 (R.I.2007) ("the state must produce on a timely basis that which [Rule 16] requires"). While Rule 16 does not require the state to go beyond the rule's requirements, *Gonzalez,* 923 A.2d at 1286; *Oster,* 922 A.2d at 164–66, the state does not have the authority to interpret the rule and decide what constitutes substantial compliance or equivalent compliance. *Verlaque,* 465 A.2d at 214.

In this case, the trial justice determined that the state knowingly had withheld discoverable material in violation of Rule 16 because of what he characterized as its "dangerous policy" of not routinely disclosing victim-impact statements before trial. He further found, however, that the state had a good-faith belief that the information contained in Jane's victim-impact statement had been provided to defendant through other discovery. Thus, he concluded, there was no "intentional non-disclosure." We deem his conclusion to be clear error.

The fact that the state did not act in bad faith, or that the defense may have received the same information through other means, is not determinative. The state may not evade the clear command of Rule 16 by its own subjective assessment of the evidence. *See Adams,* 481 A.2d at 723–24; *Verlaque,* 465 A.2d at 214. Although the prosecution in this case may not have withheld the victim-impact statement to gain a tactical advantage at trial, the effect was to deprive defendant of a witness statement that he was entitled to receive in discovery. His ability to prepare the best available defense thereby may have been impeded. *See Coelho,* 454 A.2d at 244. The nondisclosure is particularly significant in a case such as this in which the prosecution relies primarily on the testimony of the witness whose statement was withheld from defendant.

The state has a continuing duty under Rule 16 to disclose discoverable evidence.[8]

---

8. Rule 16(h) states:

*"Continuing Duty to Disclose.* If, subse-

Here, the state made a considered decision not to disclose Jane's victim-impact statement. It then compounded its discovery violation by informing the trial justice on the eve of trial that "everything that the State has right now, the defendant has." Even after the trial justice admonished the state that it could file documents *in camera* if it was uncertain about its discovery responsibilities, the state still chose not to disclose the witness statement until after trial. This is not a case in which a logistical mistake, such as a failure of communication between the prosecutor and an investigator, resulted in nondisclosure. The state made a conscious decision to suppress the statement, and it made no attempt to alert the trial justice or defense counsel about the existence of the victim-impact statement until after trial.

We are satisfied that under these circumstances the nondisclosure of the victim-impact statement obstructed the trial process and was deliberate. The state's good-faith belief that it had complied with the defendant's discovery requests because of its subjective determination that any information contained in the statement had been provided in other discovery is of no moment. Equivalent compliance is not acceptable when the requested evidence falls within the clear command of Rule 16. Accordingly, the defendant is entitled to a new trial.

### III

### Conclusion

For the reasons stated in this opinion, we vacate the judgment of conviction and remand the case to the Superior Court for a new trial.

quent to compliance with a request for discovery or with an order issued pursuant to this rule, and prior to or during trial, a party discovers additional material previously requested which is subject to discovery or inspection under this rule, he or she shall promptly notify the other party of the existence thereof."