**STATE**

v.

**Barry A. FARLEY.**

**No. 2006–349–C.A.**

Supreme Court of Rhode Island.

Jan. 14, 2009.

Aaron Weisman, Providence, for Plaintiff.

Paula Rosin, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice SUTTELL, for the Court.

The defendant, Barry A. Farley, was convicted by a jury of first-degree sexual assault, second-degree sexual assault, and four counts of second-degree child molestation upon his stepchildren. He appeals from the judgment of conviction, contending that the trial justice erred by: (1) allowing the prosecution to elicit testimony from a witness that it had not disclosed in discovery in violation of Rule 16 of the Superior Court Rules of Criminal Procedure, (2) allowing a witness to testify about her son's cognitive ability, and (3) refusing to give a cautionary instruction to the jury about comments the prosecutor made about defense counsel's use of leading questions during cross-examination at trial. The defendant seeks a reversal of his conviction and a new trial. For the reasons stated in this opinion, we affirm the judgment of the Superior Court.

1. In accordance with our customary practice, we employ fictitious names to refer to the children.

## I
### Facts and Procedural History

Barry and Deborah Farley married in 2000, approximately eight years after they started dating and seven years after defendant moved in with Deborah and her two children, Sean and Lily.[1] The defendant quickly assumed the role of the children's father figure: he was the parent to whom they would go for money and for permission to do things, and he was the family disciplinarian.

For reasons about which we can only speculate, Sean had trouble reconciling defendant's place within their family and his assumption of the father-figure role. Sean said many times, including at trial and in conversations with his mother and sister, that he would do whatever was necessary to get defendant out of his life. In autumn 2001, Sean called the hotline of the Department of Children, Youth and Families (DCYF) and alleged that defendant had hit him in the stomach and face. His complaint prompted an investigation by the DCYF. In a subsequent DCYF interview, however, Sean recanted. He said he had lied and the accusations were false. Lily, likewise, testified that she was angry at defendant and resented his role as disciplinarian and the punishments he administered. Sean testified that defendant's only form of punishment for misbehavior was to make him stand in a corner. Lily testified, however, that defendant punished both her and her brother by spanking them and putting them in their room, in addition to making them stand in a corner.

According to Mrs. Farley, Sean suffered from mental delays because of seizures he experienced at the age of three months. She further testified that when Sean was

approximately sixteen or seventeen, she and defendant jointly decided to place Sean in a group home.[2] Sean lived at the group home during the week and came home on weekends.

At trial, both Sean and Lily testified to a number of incidents of sexual assault that defendant committed upon them. Without elaborating on the lurid details of the children's testimony, suffice it to say that they both recounted acts of sexual depravity that, if found credible by the jury, clearly establish the factual predicate of the crimes with which defendant was charged.

The jurors evidently did find the children to be credible, for on February 22, 2006, they returned a verdict of guilty on the aforementioned counts of first-and second-degree sexual assault upon Sean and four counts of second-degree child molestation upon Lily.[3] The defendant moved for a new trial, which the trial justice denied. Mr. Farley was sentenced to a cumulative term of thirty years imprisonment, fifteen years to serve and the balance suspended with probation. A judgment of conviction was entered on June 19, 2006, from which defendant appealed.[4]

## II

## Discussion

### A

### The Alleged Rule 16 Violation

■ The defendant contends on appeal that the trial justice committed reversible error when he allowed Lily to testify that defendant had been physically abusive toward her brother. He asserts that the prosecution did not disclose this expected testimony before trial in violation of Rule 16.[5] The state denies any discovery violation, arguing that the prosecutor did not intend to elicit from Lily any information concerning defendant's physical abusiveness toward her brother. Even if the prosecutor had so intended, the state asserts, the information was not such a principal aspect of Lily's testimony as to require disclosure under Rule 16(a)(8). Moreover, the state contends that, even assuming there were merit to defendant's claim of a discovery violation, it was not a deliberate violation requiring a mistrial. Finally, the state contends that Lily's comment was harmless in light of the other

---

2. Before and after Barry's arrest for sexual assault and child molestation and throughout the time of trial, Sean continued to live at the group home.

3. The original indictment charged defendant with eleven offenses. The trial justice granted defendant's motion for judgment of acquittal with respect to four counts, and the jury returned a not-guilty verdict on one count of first-degree child molestation.

4. The defendant filed a notice of appeal prematurely on June 8, 2006. We treat the appeal, however, as though it had been properly filed. *See State v. Hesford*, 900 A.2d 1194, 1197 n. 3 (R.I.2006).

5. Rule 16 of the Superior Court Rules of Criminal Procedure provides, in pertinent part:

"(a) *Discovery by Defendant.* Upon written request by a defendant, the attorney for the State shall permit the defendant to inspect or listen to and copy or photograph any of the following items within the possession, custody, or control of the State, the existence of which is known, or by the exercise of due diligence may become known to the attorney for the State:

"＊ ＊ ＊

"(8) as to those persons whom the State expects to call as witnesses at the trial, all relevant recorded testimony before a grand jury of such persons and all written or recorded verbatim statements, signed or unsigned, of such persons and, if no such testimony or statement of a witness is in the possession of the State, a summary of the testimony such person is expected to give at the trial[.]"

evidence educed during the four-day trial.[6]

The disputed testimony came about when the prosecutor questioned Lily about her feelings toward defendant. The exchange went as follows:

"Q Okay. Can you tell me about the relationship that you had with Barry Farley from the time when you first met him and through the ten years you've known him?

"A We got along when we, like, at certain times, but certain times we didn't.

"Q But certain times?

"A We did.

"Q Okay. What were the times that you didn't get along?

"[DEFENDANT'S COUNSEL]: I am going to object. My argument is that it's just simply too broad a question.

"THE COURT: Can you refine it just a bit?

"[PROSECUTOR]: Sure.

"Q What were some of the things you didn't get along about?

"A Punishment things, and things that were going on, like punishment that was getting brought to my brother.

"Q Okay. What kind of punishments?

"A Like abusiveness."

At that point, defendant objected and moved for a mistrial. The trial justice denied the motion at a bench conference, stating:

"I'm not going to grant the motion to pass the case. I don't think that in any way infects the jury to the point where they can no longer be fair and objective in the matter. I would suggest, however, that without knowing where she is going with this, that I think [you would] possibly be better served by just staying away from this unless there's some specific issue that you know that you can get from her, specific area that you have to get into still, but it is so broad, I think that's the problem."

When the trial resumed the following colloquy occurred:

"Q Previously, [Lily], you talked about some reasons, or times you didn't get along with Barry because you didn't agree with the way that he punished you?

"A Yeah.

"Q What ways did he punish you?

"A Getting spanked on the butt and putting me in my room, standing in the corner.

"Q And did he punish anyone else in your family in a similar way?

"A My brother."

The questioning then moved on to other topics. Lily did not further discuss the methods of punishment defendant employed, nor did she ever expound on what she meant by "abusiveness." Nor did defense counsel voice any further objection to this line of questioning.

## 1. Standard of Review

 When reviewing a determination of whether a Rule 16 violation occurred, this Court applies a narrow standard of

---

**6.** The defendant filed a motion for issuance of a subpoena *duces tecum* on May 26, 2004, pursuant to Rule 17(c) of the Superior Court Rules of Criminal Procedure, requesting all DCYF records concerning Sean and Lily. According to the state, numerous DCYF materials were provided to both parties before trial that contained information detailing defendant's abusiveness toward Sean. Defense counsel asserted that, nonetheless, he was aware only of Sean's recanted allegation that defendant punched him in the face. We note that the DCYF documents the state relies upon are not part of the lower court file submitted to this Court.

review: " 'the trial justice must have committed clear error.' " *State v. Stravato*, 935 A.2d 948, 951 (R.I.2007); *see also State v. Motyka*, 893 A.2d 267, 280 (R.I.2006) (describing standard of review as "clearly erroneous"). The discovery ruling of a trial justice "will not be overturned absent a clear abuse of discretion." *Stravato*, 935 A.2d at 951. However, the trial justice's discretion under Rule 16 is "not a blank check." *Stravato*, 935 A.2d at 951. Rather, it "is limited, bounded by law, and reviewable." *State v. Oster*, 922 A.2d 151, 163 (R.I.2007) (quoting *State v. Coelho*, 454 A.2d 241, 245 (R.I.1982)).

### 2. Analysis

▄▄▄ Rule 16 provides for the mutual exchange of information among the parties before trial and governs the state's obligation to notify the defense of its evidence. This Court has "described Rule 16 as among the most liberal discovery mechanisms in the United States." *State v. Squillante*, 622 A.2d 474, 478 (R.I.1993) (citing *Coelho*, 454 A.2d at 244). Rule 16(a)(8)[7] requires the state to disclose, before trial, the substance of a witness's expected testimony at trial.[8] This rule requires that the state provide all relevant, recorded data on which it will base its witness testimony. *State v. Woodson*, 551 A.2d 1187, 1192 (R.I.1988). When the state does not possess such information, it must provide the defense with a summary of the expected witness testimony. *Id.* Rule 16(a)(8) "do[es] not obligate the state to provide a defendant with a detailed narration of the testimony of its witnesses."

*Woodson*, 551 A.2d at 1192. This Court has held:

> "[A] summary must contain at a minimum the principal aspects and main points of relevant oral statements of * * * testimony of a witness. The state need not document verbatim every sentence recalled by a witness * * *. Nor does every trifling detail or minutia of oral statements or testimony need to be disclosed." *State v. LaChapelle*, 638 A.2d 525, 531 (R.I.1994).

Notably, "the state cannot evade a proper Rule 16 discovery request by providing defendant with similar information found in other sources." *Stravato*, 935 A.2d at 955. Furthermore, "[t]he fact that the state did not act in bad faith, or that the defense may have received the same information through other means, is not determinative." *Id.*

In the case at bar, we are convinced that the trial justice did not abuse his discretion when he denied defendant's motion for a mistrial based on a Rule 16 violation. First, it is not at all clear to us from the context of the state's questioning that the prosecutor intended to elicit from Lily testimony that defendant had been physically abusive toward Sean.[9] The prosecutor asked the question "[w]hat kind of punishments?" in a line of questioning relating to Lily's relationship with defendant, after she had testified that they did not get along about "[p]unishment things." We recognize that the word "abusiveness" is highly charged and, depending upon the

---

**7.** Prior to the July 1, 2002 amendments to the Rules of Criminal Procedure, this subsection was denominated Rule 16(a)(7). Super. R.Crim. P. 16, Compiler's Notes.

**8.** See, *supra*, footnote 5 for the language of Rule 16(a)(8).

**9.** It is perhaps more likely that the state anticipated a response consistent with Lily's testimony before the grand jury. There, Lily had testified that defendant was the family disciplinarian, who would punish Lily by putting her "in the corner, put me in my room and spank my butt." A transcript of Lily's grand jury testimony was provided to defendant in response to his discovery request.

context in which it is uttered, may result in a Rule 16 violation if anticipated testimony of abuse is not disclosed before trial. In this case, however, the word was spoken by a teenaged witness in response to a question concerning the kinds of punishment her stepfather would inflict upon her brother. We are not at all convinced that in this context the word "abusiveness," standing alone, would lead an ordinary juror to infer that defendant had, in fact, physically abused his stepson. There is a distinction between physical abuse and corporal punishment that may not be altogether apparent in the parlance of an adolescent without further elucidation. Moreover, it is clear to us that the trial justice, sitting in his proverbial front-row seat, determined that Lily's two-word testimony of abuse had not compromised the fairness or objectivity of the jury.

Further, the transcript reveals that the prosecutor, apparently heeding the trial justice's admonishment to avoid this general line of questioning, asked Lily only one additional question concerning the ways defendant would punish her. Her response, "[g]etting spanked in the butt and putting me in my room, standing in the corner," cannot, by itself, reasonably be interpreted as an accusation of physical abuse. A juror might consider such methods inappropriate forms of punishment; but, without more, the testimony does not suggest abuse. Viewing Lily's testimony in its entirety, therefore, we fail to see how her response to which defendant objects, *viz.*, "like abusiveness," can be considered

a "principal aspect" or "main point" of her testimony. *See LaChapelle,* 638 A.2d at 531; *Woodson,* 551 A.2d at 1192. Moreover, Lily's single reference to defendant's manner of punishment as abusive simply pales in comparison to her inflammatory and detailed testimony of his sexually abusive conduct. In light of the foregoing, we are satisfied that defendant's contention of a Rule 16 violation is without merit.

## B

### Testimony about Sean's Cognitive Ability

■ The defendant also argues on appeal that the trial justice improperly overruled an objection to Mrs. Farley's testimony that her son Sean had the mental maturity level of a ten-to-twelve-year old.[10] The defendant argues that this testimony constituted hearsay because Mrs. Farley was not the person who diagnosed her son's level of cognitive functioning. He further contends that the testimony cannot be properly construed as lay witness opinion and that the prosecution should have presented this testimony through a qualified expert.[11] The state counters that the trial justice did not abuse his discretion in allowing Mrs. Farley to opine on her own son's mental maturity level, especially considering that Sean's cognitive limitations were not at issue in the case and had no bearing on defendant's conviction.

### 1. Standard of Review

■ "It is well settled that '[t]he admissibility of evidence is a question ad-

---

**10.** Sean was about twenty years old at the time of trial.

**11.** Rule 701 of the Rhode Island Rules of Evidence permits the admission of lay witness opinion, stating:

"If the witness is not testifying as an expert, the witness' testimony in the form of opinions is limited to those opinions which are (A) rationally based on the perception of the

witness and (B) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

Rule 702 of the Rhode Island Rules of Evidence contemplates that when testimony requires "scientific, technical, or other specialized knowledge," that testimony should be presented through a qualified expert.

dressed to the sound discretion of the trial justice and will not be disturbed on appeal absent a clear abuse of that discretion.'" *State v. Barkmeyer*, 949 A.2d 984, 1005 (R.I.2008) (quoting *State v. Lynch*, 854 A.2d 1022, 1031 (R.I.2004)). "We give considerable latitude to a trial justice's rulings made during examination of witnesses at trial." *Id.* (quoting *State v. Gomez*, 848 A.2d 221, 237 (R.I.2004)).

### 2. Analysis

Both parties find support for their respective positions in *State v. Barrett*, 768 A.2d 929 (R.I.2001). In that case, we upheld the ruling of the trial justice precluding lay witnesses, including the defendant's father, from testifying about the defendant's mental state. *Id.* at 939. We broadly recognized that "[a]ny supporting rationales for the admission of lay witness opinion is less available in cases calling for lay opinion on an individual's mental state," especially "at a time when that other person was not being observed by the lay witness." *Id.* at 941. In the case under review, defendant asserts that the prosecutor was permitted to do what this Court held the trial court properly did not permit in *Barrett*—namely, allowing a lay witness to testify to another's mental state. The state, however, emphasizes that the holding in *Barrett* was predicated on the fact that the decision to permit lay-opinion testimony is left to the sound discretion of the trial justice. Significantly, in *Barrett*, the defendant's mental state was a disputed element of the crime at issue—murder—and our holding pertained narrowly

to the defendant's mental state *at the time of the killing*, an event that the witnesses did not observe. *See id.* at 939–40.

We are of the opinion that *Barrett* is not controlling with respect to the case before us, in which Sean's cognitive maturity was not an issue.[12] The charges against Mr. Farley had no correlation with Sean's limitations. Additionally, Sean's cognitive ability was not new information to the jury. The state said in its opening statement that Sean has "some limitations as to his mental maturity," and both Sean and his mother testified that he attended special education classes in school. As the trial justice indicated to counsel outside the presence of the jury, "I think the jury had a chance to observe [Sean] as he testified, and I think that they could see that there had to be some liberties taken with regard to how he was questioned." In light of these circumstances we decline to assign reversible error to Mrs. Farley's testimony concerning her son's mental maturity.

Moreover, in *State v. Gardiner*, 895 A.2d 703, 712 n. 11 (R.I.2006), we noted that "[t]here is no precedent in Rhode Island holding that expert testimony is required to establish mental disability under [G.L. 1956] § 11–37–2(1)" in which the victim's mental incapacity is an element of first-degree sexual assault. We further observed that "[t]he majority of jurisdictions addressing this issue have applied a case-by-case approach to assess whether lay evidence proffered at trial is sufficient to

---

**12.** In *State v. Barrett*, 768 A.2d 929, 940 (R.I. 2001), the defendant had asserted diminished capacity as a defense to the *mens rea* element of second-degree murder. We note that evidence regarding a defendant's mental state as an element of a crime and evidence regarding a witness' cognitive ability are two distinct evidentiary concepts. Indeed, *Barrett* is especially inapplicable here as, generally, it would be more appropriate for a lay witness to testify to a defendant's mental state than a witness' cognitive ability, and more likely that an expert witness would be required to testify regarding cognition. We repeat that *Barrett's* holding pertained to the elemental idea that a witness *perceive* the observation about which he or she is testifying.

establish the victim's diminished mental state." *Gardiner*, 895 A.2d at 712 n. 11. Here, there was no allegation that Mr. Farley took advantage of a mentally disabled person. Thus, Sean's mental state was neither an element of an offense with which defendant was charged nor an issue in the case. It was mere surplusage.

The trial justice committed no error in allowing Sean's mother to testify concerning his mental capacity. *See Jackson v. State*, 890 P.2d 587, 589, 590 (Alaska Ct. App.1995) (allowing victim's mother to testify about her daughter's mental disability because her "lifelong relationship to [the victim] and intimate knowledge of her daughter's condition made her peculiarly well qualified to give lay testimony"). Also, we need not tarry over defendant's argument that Mrs. Farley's statement that Sean has "the mentality of between a 10 to 12–year old" constitutes impermissible hearsay. Even if she were merely repeating a diagnosis made by some other person, which is not at all clear from the context of the questioning, the admission of the statement could not have prejudiced defendant. We are satisfied that the admission of her testimony was a sustainable exercise of the trial justice's discretionary authority.

## C

### Reference to Leading Questions in Closing Argument

■ The remaining argument advanced by defendant is that the trial justice committed reversible error by overruling his objection to the prosecutor's comments during closing argument concerning defense counsel's use of leading questions during Sean's cross-examination and by refusing to give a cautionary instruction to the jury upon defendant's request. He argues that the trial justice should have informed the jury that it is entirely proper for a lawyer to ask leading questions on cross-examination. The state contends that the trial justice made a thoughtful determination in overruling defendant's objection and did not abuse his discretion.

A brief explanation of Sean's testimony is necessary. During cross-examination, defense counsel asked Sean about a pornography video defendant played and watched with Sean. Specifically, he asked Sean, "[Y]ou didn't mind doing that; is that right?" Defense counsel then asked Sean about grand jury testimony he gave, asking, "So you wanted to take your pants off; right?" and "You did [a sexual act] because you wanted to do it; that's what you told the Grand Jury; is that right?" Sean answered yes to both. To dispel the idea that Sean consented to defendant's actions, during closing argument the prosecutor argued as follows:

"Now, [defendant] wants you to believe that just because [Sean] may have said on the record * * * that there possibly could not have been force or coercion. And, actually, in the course of questioning [Sean], perhaps putting in your minds maybe for a split second or want you to believe that [Sean] actually consented to these crimes, to these sexual acts.

"Remember how the questioning was put to [Sean]? This is [defense counsel], a trained and skilled defense lawyer, asking leading questions of [Sean] with the mentality of a 10 to 12—

"[DEFENSE COUNSEL]: I object, Judge.

"THE COURT: Overruled. Go ahead.

"[PROSECUTOR]: The beauty of leading questions, ladies and gentlemen, is that they suggest the answer. And when answers are suggested to

individuals of normal intelligence, sometimes they acquiesce to that answer.

"So I hope you all were paying attention to the questions and answers that went back and forth on the cross-examination of [Sean], and realize that some of [Sean's] answers were suggestions by [defense counsel]. 'You wanted him to take down your pants. Yes, I did.' Do you really think, ladies and gentlemen, that this [boy] wanted his stepfather, who he supposedly hated so much, putting his penis in his butt?"

After arguments, defendant requested the trial justice to instruct the jury that "it's axiomatic that on cross-examination the advocate may use leading questions." The trial justice refused, stating, instead, that upon defendant's objection he immediately cautioned the jury that arguments are not evidence. The trial justice, in fact, had not given any instruction to the jury after defendant's objection, but he had instructed the jury that arguments are not evidence on at least three other occasions throughout trial and during the charge to the jury. He also reasoned that the jury had observed Sean as he testified and could see that some liberties had to be taken during his questioning, presumably because of his cognitive limitations.

### 1. Standard of Review

 If the prosecution makes an improper comment, the defense is entitled to a cautionary instruction upon request. *State v. Turner*, 561 A.2d 869, 873 (R.I. 1989) (citing *State v. Jefferson*, 116 R.I. 124, 140, 353 A.2d 190, 199 (1976)). However, "[a] prosecutor is given considerable latitude in closing argument, as long as the statements pertain only to the evidence presented and represent reasonable inferences from the record." *Barkmeyer*, 949 A.2d at 1007 (quoting *State v. Boillard*, 789 A.2d 881, 885 (R.I.2002)). "[T]he trial jus-

tice must assess the probable effect of the remark within the factual context of the evidence presented." *Id.* (citing *State v. Lane*, 609 A.2d 633, 636 (R.I.1992)). As the "front row" observer during trial, the trial justice can best evaluate the effects of any prejudice to the jury. *Id.* Accordingly, "[t]he ruling of the trial justice * * * is accorded great weight and will not be disturbed on appeal unless clearly wrong." *Id.* (quoting *State v. Mello*, 472 A.2d 302, 304 (R.I.1984)).

### 2. Analysis

In *Barkmeyer*, 949 A.2d at 1006–07, we refused to reverse a conviction in which the prosecutor stated during closing argument that "[t]hroughout this trial, [defense counsel] has * * * asked questions and made arguments all in the hope of distracting you from the truth in this matter." The trial justice overruled the defendant's objection and gave a cautionary instruction in his charge to the jury that closing arguments are not evidence. *Id.* at 1006. Although we admonished the prosecution for suggesting that defense counsel was intentionally misleading the jury, we were not convinced that this remark was prejudicial to the defendant. *Id.* at 1007–08. We held that, in the context of that case, the trial justice was not "clearly wrong" in finding that these comments were "within the 'considerable latitude' afforded to prosecutors who bear a heavy burden of proof in a criminal case." *Id.* at 1008 (quoting *Boillard*, 789 A.2d at 885).

 In the case at bar, we are deeply troubled by the state's comments during closing argument, and we again rebuke the prosecution for its inappropriate commentary. A closing argument should focus on the evidence educed at trial and not upon the manner in which opposing counsel performed. We also emphasize that the use

of leading questions on cross-examination is expressly permissible pursuant to Rule 611(c) of the Rhode Island Rules of Evidence ("[o]rdinarily leading questions should be permitted on cross-examination").

Nevertheless, we consistently have recognized the wide-ranging latitude enjoyed by the prosecution in closing arguments. Here, the prosecutor's inappropriate comments about defense counsel's tactics could also be viewed as commentary about Sean's susceptibility to suggestion because of his mental limitations—limitations that were recognized by the court and both parties. Furthermore, and significantly, the court instructed the jury on several occasions that the remarks, statements, and personal opinions that counsel expressed during closing arguments are not evidence and are not to be considered by the jury during deliberations. In this context, we are not persuaded that the trial justice was "clearly wrong" in finding that these remarks were not prejudicial to the defendant. Nor can we say he erred by not giving a cautionary instruction at the time that the defendant requested it.

## III

### Conclusion

For the reasons stated in this opinion, we affirm the judgment of conviction entered in the Superior Court. The record may be remanded to the Superior Court.