DECISION
Christopher Thornton (Thornton), currently serving a lengthy prison term for heinous crimes committed over fourteen years ago, is again back before this Court seeking redress. His pro se
pleadings are in the nature of a Motion for a New Trial based on newly discovered evidence.
This Court appointed Kenneth C. Vale, Esq. to represent Thornton in the pending matter. In his pleadings and hearing arguments made on behalf of Thornton, Attorney Vale terms his client's current request as a successive application or petition for post conviction relief. Accordingly, this Court will analyze this matter as both a Motion for New Trial under Super. R. Crim. P. 33 and an application for post conviction relief governed by G.L. 1956 § 10-9.1-1, et. seq. The essence of Thornton's claim for relief is his assertion that the prosecution failed to honor its Super R. Crim. P. 16[1] discovery obligations by failing to provide him[2] the victim impact statements of Debra Means (Debra) and Diane Sullivan (Diane), both whom testified at trial. *Page 2 
 Travel
Some six years prior to the June 1996 events which gave rise to his prosecution in the instant case, Thornton had been engaged in a relationship with Debra from which, a daughter, Amy, [3] was born. Debra also has a son, Adam, [4] from an earlier relationship. The relationship between Thornton and Debra was described as having been a tumultuous one during which he had beaten her. Shortly before the events giving rise to this prosecution, Debra broke off the relationship and obtained a no-contact order against Thornton. However, he was permitted to visit his daughter, Amy. On the afternoon of June 18, 1996, Thornton unexpectedly walked into Debra's apartment with a knife having a blade at least ten inches long. This incursion into Debra's apartment led to a fourteen hour standoff with the Narragansett Police. During this standoff, Thornton punched Debra in the face, knocking out her front teeth. He stabbed her four times, twice in the side, once in the back, and once in the arm. Also during the standoff, when Diane, Amy's babysitter, called Debra, Thornton threatened to kill her if she testified and he had to go to jail.
On September 23, 1996, a Washington County grand jury indicted Thornton, charging him with ten offenses stemming from the June 18-19, 1996 incident at Debra's apartment. He was charged with first degree sexual assault of Debra (Count 1); assault with a dangerous weapon in a dwelling (Count 2); assault with a dangerous weapon (Count 3); assault with the intent to murder Debra (Count 4); assault resulting in serious bodily injury (Count 5); breaking and entering a dwelling without consent of Debra (Count 6); violation of no-contact order (Count 7); *Page 3 
kidnapping Debra (Count 8); intimidating a witness (Count 9); and kidnapping Amy (Count 10).
Thornton's trial before a Washington County Superior Court jury took place on December 2-5, 1997. On December 8, the jury returned its verdicts on the nine charges submitted to it.[5] The jury found Thornton guilty on Count 3 (felony assault with a dangerous weapon); Count 5 (felony assault resulting in serious bodily injury); Count 7 (violation of no-contact order; Count 8 (kidnapping Debra); and Count 9 (intimidating a witness). He was found not guilty on Count 1 (first degree sexual assault of Debra); Count 2 (assault with a dangerous weapon in a dwelling); Count 4 (assault with the intent to murder Debra); and Count 10 (kidnapping Amy).
After sentences were imposed, Thornton timely appealed. In his direct appeal, he asserted that: (1) the trial justice erred in permitting him to waive his right to counsel without first determining whether such waiver was knowingly and intelligent; (2) the trial justice unduly impaired his right of self-representation; (3) the trial justice erred in precluding admission of defense evidence that allegedly would have supported his diminished capacity defense; and (4) the trial justice erred in permitting introduction of past incidents of misconduct by Thornton during the prosecution's cross-examination of defense expert Dr. Ronald Stewart. Also before the Court was the Defendant's consolidated appeal from denial of his post-trial motion to reduce sentence. On June 27, 2002, the Supreme Court of Rhode Island denied the Defendant's appeal. See Thornton v. State,800 A.2d 1016, 1045 (R.I. 2002). *Page 4 
On December 6, 2004, following his unsuccessful direct appeal, Thornton filed a pro se application for post-conviction relief pursuant to G.L. 1956 § 10-9.1-1, et. seq. In his application, he alleged: (1) ineffective assistance of counsel; (2) judicial error with respect to waiver of his constitutional rights; and (3) errors in sentencing. After he was appointed counsel, the pertinent issues were briefed and hearings were held before another justice of this Court. That justice denied Thornton's application. Thornton appealed but was again rebuffed by the Supreme Court. See Thornton v. State,948 A.2d. at 317.
Thornton is again before the Superior Court arguing that the teachings of Brady v. Maryland, 373 U.S. 83 (1963) and newly discovered evidence require that he receive a new trial.
 The Evidence in Question
The evidence Thornton bases both of his new claims on are two victim impact statements filed with the Court on July 29, 1997. One statement was written by Debra, and the other statement was written by Diane. Debra's victim impact statement described her emotional response to the events that transpired on June 18-19, 1996. She described her fear that if Thornton were to be released from prison he would return and kill her. She also described her desire to see Thornton serve a life sentence. Debra stated that she suffered from post traumatic stress disorder as well as depression. She further reported that her children attended counseling sessions for "Rejuvenation" at the Women's Resource Center. In describing her injuries, she stated that Thornton punched out her front teeth, inflicted three deep stab wounds to her back and one to her elbow. She further detailed her recovery process. By example, she reported that her stab wounds were too old by the time she arrived at the hospital to allow closure by suture. This resulted in a four week in-home treatment. Moreover, she had to wear temporary teeth implants *Page 5 
for six months because the oral surgeon could not implant permanent replacement teeth until the traumatic injury to her jaw had healed. Debra ended her statement with a description of the pecuniary damages she suffered.
Diane's victim impact statement only reflected her emotional response to the events that transpired on June 18-19, 1996. She described how she is anxious, startles easily, cries and has a reduced appetite. She reported two counseling sessions for crisis intervention. Likewise, Diane stated that she is afraid that her life would truly be at risk if Thornton were ever released from prison and feels he is deserving of a life sentence.
 The Brady Issue
Thornton's current counsel filed an extensive memorandum with the Court, concluding that Thornton's claims have no merit. Believing that the posture of the case was in the nature of a successive application for post-conviction relief, counsel argued in a memorandum prepared consistently with directive of Shatney v.State, 755 A.2d 130 (R.I. 2000), that even if the state had failed to provide victim impact statements to Thornton, the sanctions pursuant to State v. Stravato,935 A.2d 948 (R.I. 2007) do not apply. See Memorandum Of Law In Support Of Motion To Withdrawal 10-27. In sum, counsel argues that Stravato[6] established a new procedural rule (automatic reversal of conviction and new trial required) which does not apply retroactively to a case tried in 1997. *Page 6 
Thornton has abandoned any claims under Stravato, [7] and bases his current claims for a new trial on the rule ofBrady v. Maryland and his "discovery" of allegedly new evidence. In Brady, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good or bad faith of the prosecution." 373 U.S. at 87. The state is required to disclose information if it meets a two-part test: (1) the information must constitute either exculpatory or impeachment evidence; and (2) it must be material to the outcome of the case or sentencing. State v. Wyche,518 A.2d 907, 909 (R.I. 1986). To be material, evidence must present "a reasonable probability that, had . . . [it] been disclosed to the defense, the result would have been different." United States v.Bagley, 473 U.S. 667, 682 (1985).
Assuming arguendo, that the victim impact statements should have been turned over to Thornton during discovery, he would not be entitled to a new trial based on Brady because the information in the victim impact statements was either immaterial or already provided in discovery. In large part the same information was presented to the jury. Obviously, any information presented to the jury was heard simultaneously by Thornton. Debra's and Diane's renditions of their emotional responses to the attack and ensuing standoff and their desire to see Thornton sentenced to life in prison is neither exculpatory nor impeachment evidence. Debra did provide a very cursory description of her injuries in her victim impact statement. However, the same information was provided to Thornton in the State's Answer to Defendant's Motion for Discovery and Inspection. The State provided Thornton with the transcript of Debra's oral statement taken in the hospital and medical reports from Dr. David Coppe and Dr. John *Page 7 
Goldberg, all of which provided a detailed description of Debra's wounds. Furthermore, Debra's testimony at trial did not differ from the cursory description she provided in her victim impact statement.[8] Therefore, it is not reasonably probable that had the victim impact statements been directly disclosed (in hand or by mail) to the defense, the result would have been different.
Moreover, the victim impact statements were readily available to both Thornton — who chose to represent himself — and his standby counsel. The statements were filed with the Court on July 29, 1997, and remain to this day in the official case file. Clearly, the state did not intend to hide or fail to disclose them. Thornton may not choose to stick his head in the sand and then claim to have been harmed as a result. Thornton is not entitled to a new trial based on the teachings of Brady.
 Newly Discovered Evidence
Thornton argues that the victim impact statements constitute newly discovered evidence which should result in a new trial. The test for whether newly discovered evidence warrants a new trial has two prongs. First, the evidence must be analyzed under four elements: (1) the new evidence must have been discovered since trial; (2) even with the exercise of due diligence, the evidence was not discoverable prior to trial; (3) the evidence must be material, and not merely impeaching or cumulative; and (4) the evidence must be so crucial that the jury probably would have acquitted the defendant. State v. Luanglath, 863 A.2d 631, 639 (R.I. 2005). Second, the trial justice then must exercise his or her independent judgment to determent whether the newly discovered evidence is sufficiently credible to warrant vacating a jury conviction.See id. *Page 8 
Thornton has arguably fulfilled the first element. However, he has failed as to the second, third, and fourth elements of the first prong. Through the exercise of due diligence, Thornton and his standby counsel would have easily found the victim impact statements in the court file. Not only are they present but they are clearly referenced in the Criminal Docket Sheet Report for the case. The third element requires that the evidence be material, and not merely impeaching or cumulative. The information in the victim impact statements is either immaterial or merely cumulative. Debra's victim impact statement describes her emotional response to the events that transpired on June 18-19, 1996 and the pecuniary damages she sustained, neither of which is exculpatory or impeaching. Additionally, Debra's victim impact statement contained a brief description of the injuries she sustained, which did not differ from previous statements or her trial testimony. Thus, the description of the events in question contained within the victim impact statement is merely cumulative. Diane's victim impact statement merely states her emotional response to the events that transpired on June 18-19, 1996 and is likewise not material[9].
The fourth element requires that the evidence must be so crucial that the jury probably would have acquitted the defendant. The victim impact statements do not provide any new material information and what little material information they do provide was already presented before the jury. Thus, it is highly unlikely that the jury would have acquitted the Defendant had these statements, or any part of them, been presented to the jury. Because the victim impact statements failed the first prong of the test for granting a new trial based on newly discovered evidence, it is unnecessary for the Court to discuss the second prong of the test. Nor has Thornton demonstrated that "there exists evidence of material facts, not previously presented and *Page 9 
heard, that requires vacation of [his] conviction or sentence in the interest of justice." G. L. 1956 § 10-9.1-1(a) (4). To the extent that Defendant Thornton has attempted to raise other issues in support of his motion, this court finds that they are devoid of merit or barred by the doctrine of res judicata. SeeMattatall v. State, 947 A.2d 896 (R.I. 2008).
 Conclusion
For the above stated reasons, Thornton's motion for a new trial, or in the alternative, petition for post conviction relief is denied.
[1] Super. R. Crim. P. 16 is to be interpreted liberally.See State. v. Stravato, 935 A.2d 948 (R.I. 2007).
[2] Thornton represented himself at trial but had stand-by counsel, Anthony F. Amalfetano, Esq., with whom he consulted on many occasions.
[3] This is not the child's real name.
[4] This is not the child's real name.
[5] At the close of the State's case in chief, the trial justice granted the Defendant's motion of acquittal on Count 6.
[6] In State v. Stravato, the prosecution deliberately withheld witness impact statements from the defendant in violation of Rule 16 of the Superior Court Rules of Criminal Procedure. The court noted that where the state's nondisclosure is deliberate, prejudice is presumed and the defendant is entitled to a new trial. Whether the state acted in bad faith, or the defense may have received the same information through other means, is not determinative. Even if the prosecution does not withhold the victim impact statement to gain a tactical advantage at trial, the effect is to deprive the defendant of a witness statement that he is entitled to receive in discovery. See935 A.2d 948, 951,953, 955 (R.I. 2007).
[7] "I am not asking you to decide if Stravato applies. I am asking you to decide the long-standing case law of the rule ofBrady v. Maryland to determine if a Rule 16 violation occurred." (Hr'g Morning session April 8, 2010 at 12.)
[8] "He punched me in my face and knocked my teeth out"; "I was stabbed four times . . . three in the back, and one in the arm." (Trial Tr. Vol. 1 at 122, 136 (Dec. 2-3, 1997)). "[P]unch[ed] out my front teeth"; "There were three deep stab wounds to my back and one to my elbow." (Debra Means' Victim Impact Statement.)
[9] Two other written statements were provided to the Court during the sentencing hearing. Those were "filed in open court" and referenced repeatedly during the hearing. Accordingly, this Court finds that disclosure of these was made to the defendant at that time.