279 A.2d 419.

ALFONSINE SALIMENO *et ux. vs.* DONALD E. BARBER.

JULY 12, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J.  This is a negligence action brought by a husband and wife for injuries received by the wife when she was struck by an automobile owned and operated by the defendant.  A jury trial was held in the Superior Court. The jury returned a verdict for the defendant.  The trial justice denied the plaintiffs' motion for a new trial.  In their appeal, the plaintiffs claim that the trial justice erred in denying their motion for a mistrial and their motion for a new trial.  Hereafter, when we refer to the plaintiff, we shall be referring to plaintiff wife.

The incident which caused this suit occurred in Westerly on the windy and snowy evening of February 28, 1964.  At that time plaintiff, who was then 62, worked as a seamstress. She left work at approximately 8:30 p.m.  The plaintiff's nephew drove her from her place of employment to the intersection of Granite and Spruce Streets.  Granite Street runs east and west.  Its grade rises as one travels from west to east.  Spruce Street, in forming a "T" intersection with Granite Street, runs in a northerly direction.  The Salimenos' home is located on the westerly side of Spruce Street a short distance in from the intersection.

The plaintiff testified that when she alighted from her nephew's car, there was snow on the ground and it was slippery.  She looked to her left (west) and her right (east) and seeing no vehicles coming, she proceeded to cross Granite Street so as to arrive at the sidewalk which runs along the westerly side of Spruce Street.  The plaintiff said that when she arrived in the middle of the road (it was 31 feet in width), she looked again for cars, saw none and continued on her way.  She saw defendant's car approaching from the

east when she was "only a few feet away from the curb." The defendant's automobile struck plaintiff on her right side and then came to rest against a fire hydrant that was on the westerly corner of the intersection.

The defendant's version of what happened differed from that offered by plaintiff. He stated that as he came down the incline on Granite Street, his car was in low gear. He estimated his speed to be 10 miles per hour. The street was well illuminated but the snow restricted the driver's front view from somewhere between 75 and 100 feet. Although the windshield wipers were operating, the snow was building up on the car's front window. The defendant said he first saw plaintiff pedestrian when she had not yet reached the center of the road. He kept plaintiff in his sight and when he saw that a collision was imminent, he tried to turn the car away from her. He also applied his brakes. The car skidded and finally came in contact with the hydrant. At the trial, defendant declared that the pedestrian had walked into the side of the car. He admitted, however, that he had told the police that his car had hit plaintiff.

The automobile sustained little damage. The plaintiff, however, suffered a fractured pelvis and several fractured ribs. She spent a month in the hospital. She was treated by several physicians, one of whom is her brother.

Since we believe that the trial court's denial of the mistrial motion was erroneous, we shall limit our consideration to a particular portion of plaintiffs' appeal. In so doing, it is necessary to set forth the factual background pertinent to this issue.

This case came on for trial in Westerly during mid-May 1970. One of the physicians who treated plaintiff was an orthopedic surgeon. At a pretrial hearing, it was disclosed that the surgeon would not be available to testify at the trial. Three medical reports made by this surgeon were shown to defense counsel. It was suggested that since the

doctor would be unavailable, all three reports be allowed into evidence. While defendant's counsel had no objection to one report dated July 17, 1964, he objected to having the other reports made part of the record. Consequently, none of the reports were introduced into evidence.

The plaintiff's brother testified as a medical witness. In direct examination he described the care and the extent of treatment he had given his sister from the date of the collision up until March 1966. The defense in its cross-examination of this witness inquired whether or not he had used the reports of the orthopedic surgeon in forming his diagnosis and the witness replied in the negative. The witness testified that he had not used the consultant's reports to refresh his recollection. Thereafter, plaintiffs' objections to defendant's repeated references to the orthopedist's report were sustained. The defense then asked the following question:

> "Q I will ask you, Doctor, in all fairness, Doctor Savastano on July 17, '64, reported no further treatment indicated, is that so?"[1]

At this point, plaintiffs' counsel informed the court that he was going to make a motion. The jury was excused. The plaintiffs moved for a mistrial. A colloquy between counsel and the court ensued. The court then characterized the defense tactics as a "pretty low blow," "reprehensible" and not in accord with "any of the rules of evidence" or "any of the rules that apply to the trial of a fair and impartial trial, which both parties are supposed to get, in my courtroom and in every courtroom." The trial justice concluded his remarks by saying that the pending question had not prejudiced plaintiffs and denied their motion. The court took a short recess. When it reconvened, the jury

---

[1]The report to which the defense found unobjectionable was dated July 17, 1964. The reports are not before us. The plaintiffs contend that examination of the other two reports would show that the wife did in fact return to Dr. Savastano for further treatment.

returned to the courtroom and the trial continued. At no time was any effort made to admonish the jury about the question that had been pending when they had left the courtroom.

A trial justice's decision that trial counsel's tactics have not prejudiced his adversary's right to a fair trial is usually given great weight and will not be reversed unless clearly wrong. *Fargnoli* v. *Cecil,* 102 R. I. 420, 230 A.2d 883. Here, however, the trial justice in considering plaintiffs' motion for a mistrial has so expressed himself that we cannot accord to his ultimate finding the weight we ordinarily grant such a conclusion. The trial court made an express finding that counsel's actions had violated "every rule" whose aim is the assuring that all law suits shall be determined by evidence which has been properly admitted for consideration by the fact finder. This observation, in our opinion, is completely at odds with the court's finding of no prejudice. It is clear that, at that point in the trial, plaintiffs' case had indeed been harmed by the improper and purposeful action of defendant's counsel.

Our judicial system is bedded on the assurance afforded to all litigants that the impartiality of a jury's verdict is above suspicion. To accomplish this objective, a jury trial should be conducted so that the jury's verdict will command confidence as a decision that is completely devoid of any influence of prejudice or sympathy. When an improper extraneous matter of a harmful nature is intentionally injected or accidentally comes to the attention of the jury, it is the trial justice's obligation and duty, upon complaint being made, to free the evidence from such matter, if possible, with a proper warning to the jury. On the other hand, if this is not reasonably possible, then he ought to pass the case. *Lavigne* v. *Ballantyne,* 66 R. I. 123, 17 A.2d 845. *See,* also, *Lewis* v. *Allard,* 108 R. I. 534, 277 A.2d 744; *Harrod* v. *Ciamciarulo,* 95 R. I. 504, 188 A.2d 459. It is immaterial

whether the improper information is conveyed to the jury in the form of a question or as a declaration of fact. *Dow* v. *Weare,* 68 N. H. 345, 44 A. 489. The trial justice recognized what was going on when he described counsel's repeated efforts to delve into the orthopedist's February report as an attempt to "sneak in the back door what Mr. Zucker refused to let in the front door * * *."

The trial justice compounded his erroneous finding by failing to admonish the jury when they returned to the courtroom to ignore the question that had been pending at the time of their departure. We have examined the charge and find nothing there which neutralizes the prejudice generated by the improper tactics of the defense.

We will not, in the circumstances of this case, adopt the view that the disputed inquiry related solely to question of damages and not liability. Such a contention attributes to this court a naïveté which it does not have. This inquiry was part of a concerted attack on the wife's credibility. During its cross-examination of the wife, the defense made a great effort to show that the wife's in-court testimony was inconsistent with information she gave in response to one of defendant's interrogatories. The plaintiffs maintained that there was no conflict between the testimony and the reply to the interrogatory.

The defendant's question planted in the jurors' minds the obvious suggestion that the medical witness, the wife's brother, was suppressing a statement made by an eminent surgeon which was completely at odds with the brother's testimony. We are not convinced that the jury did not visit the brother's alleged sin of concealment upon his sister. Since we cannot draw a definite line and attribute the result of defense counsel's conduct solely to the question of damages, a new trial must be had.

We are aware that an attorney is a partisan advocate. Although aggressive advocacy is to be commended, it has

limits. This case was vigorously tried by both counsel. It is unfortunate where, as here, in the heat of battle, counsel became overzealous as an advocate and violated the rules of fair play which should be the controlling guide in the conduct of all trials. In ordering the new trial, we think it appropriate to allude to the following principle found in *Bishop* v. *Chicago Junction Ry.*, 289 Ill. 63 at 71, 124 N. E. 312 at 315:

"While it is regretable that this case must be reversed because of improper conduct of intelligent and able counsel, yet if courts of law are to be sources of justice, the rule that parties litigant, regardless of who they may be, shall have secured to them the opportunity to have the issues of their case tried by a jury free from the prejudicial influence of improper conduct of counsel must be strictly enforced."

The plaintiffs' appeal is sustained; the judgment appealed from is vacated and the case is remitted to the Superior Court.

*Cappuccio & Cappuccio, Louis B. Cappuccio*, for plaintiffs.

*Martin M. Zucker*, for defendant.