# STATE

### v.

## Radames GONZALEZ.

### No. 2005-324-C.A.

Supreme Court of Rhode Island.

June 20, 2007.

---

Virginia M. McGinn, Providence, for Plaintiff.

John F. Cicilline, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on May 15, 2007, on appeal by the defendant, Radames Gonzalez (defendant or Gonzalez), from a Superior Court judgment of conviction for numerous drug charges, including three counts of delivery of cocaine; one count of possession of between one ounce and one kilogram of cocaine; one count of possession of cocaine with intent to deliver; and finally, resisting arrest. Before this Court, defendant contends that his due process rights were violated and that he was denied a fair trial because the trial justice refused to declare a mistrial based on discovery violations by the state. For the reasons stated in this opinion, we vacate the conviction.

### Facts and Travel

In 2000, in an effort to combat drug trafficking, the Rhode Island State Police (State Police) and the Federal Bureau of Investigation (FBI) joined forces and formed the High Intensity Drug Trafficking Area Narcotics Task Force (Task Force). In August 2003, Detective Michael Douglas (Det. Douglas), a twenty-year veteran of the Cranston Police Department, was working for the Task Force as an undercover officer. In connection with the assignment, Det. Douglas received information from a confidential informant (informant) that defendant was selling cocaine on the streets of Providence. Working undercover, Det. Douglas accompanied the informant on several drug buys. In the course of the investigation, he learned where defendant lived (301 Blackstone Street, Providence) and his vehicle registration. He also obtained a photograph of defendant and verified that he was the person engaged in selling drugs. Significantly, much of the foregoing information, including the fact that Det. Douglas accompanied the informant on several drug buys (thereby affording Gonzalez an opportunity to see and become familiar with Det. Douglas) and the FBI reports of these earlier encounters, was not provided in discovery.

The evidence disclosed that at some point in the investigation, defendant began

dealing with Det. Douglas directly, and the two would meet at a prearranged location on West Friendship Street in Providence. Detective Douglas testified that when he arrived at the location in his undercover vehicle, defendant—apparently familiar with Det. Douglas from earlier encounters with the informant—would motion for him to approach his vehicle, and the two would exchange money for a bag of cocaine.[1] This procedure was repeated several times, until August 13, 2003, when members of the Task Force arrested defendant on West Friendship Street.

Before the arrest, search warrants were obtained for defendant's person, as well as for his home and vehicle. On August 13, 2003, Det. Douglas contacted Gonzalez, purportedly to purchase $400 worth of cocaine, and the two agreed to meet on West Friendship Street. Detective Douglas was accompanied by several officers who planned to arrest Gonzalez, search his car, and then execute the search warrant at his home on Blackstone Street. However, as Det. Douglas was approaching the vehicle, Gonzalez became aware of the other officers and he attempted to escape through the vehicle's window. He resisted arrest, but was apprehended after a struggle with police.

A search of defendant's vehicle produced a small black film canister that contained six bags of cocaine, as well as a cellular telephone that corresponded to the number Det. Douglas had called to set up the drug transactions. The detectives also executed the search warrant for Gonzalez's house on Blackstone Street, where cash, cocaine, and drug paraphernalia were seized. Detective Douglas testified that he and Gonzalez "responded to an upstairs bedroom" and that defendant "had informed us that that was his bedroom." In a nightstand in that bedroom, Det. Douglas located thirty-eight plastic bags of cocaine and a small scale. On the floor underneath the nightstand, the officers found a large block of cocaine, cash, and a digital scale. In total, between five and six ounces of cocaine were seized.

The defendant was charged by way of criminal information with three counts of delivery of cocaine, possession of one ounce to one kilogram of cocaine, possession with intent to distribute cocaine, and resisting arrest. After a jury trial, defendant was found guilty of all counts, and subsequently was sentenced to fifteen years in the Adult Correctional Institutions, with three years to serve, and twelve years suspended, with probation for the cocaine offenses and a concurrent sentence of one year to serve for resisting arrest. The defendant filed a timely notice of appeal, and argues that three separate discovery violations by the state denied him a fair trial.

## Analysis

We begin by noting that in prosecuting a criminal case, the prosecution may not gain a strategic trial benefit "by violating, whether intentionally or unintentionally, the rules of discovery." *State v. Darcy*, 442 A.2d 900, 903 (R.I.1982). This state has "one of the most liberal discovery mechanisms in the United States." *State v. McParlin*, 422 A.2d 742, 745 (R.I.1980). Rule 16 of the Superior Court Rules of Criminal Procedure is designed to afford the accused notice of the charges, the basis for those charges, and the evidence that the state possesses which led to the prose-

---

1. Detective Douglas testified that in these exchanges, he received a bag of what he believed at that time to be cocaine and that later field-tested positive for cocaine; the toxicology lab later confirmed that the substance indeed tested positive for cocaine. For the sake of clarity, each time this opinion refers to "cocaine," it is intended to indicate that which the police officer initially believed to be, and later was confirmed to be, cocaine.

cution. *See id.* It is intended to prevent unfair surprise or "trial by ambush." *State v. Small,* 735 A.2d 216, 218 (R.I.1999) (mem.). Because the underlying purpose of Rule 16 is to ensure that an accused has an adequate opportunity to defend, untimely disclosure of discovery material not only "make[s] the task of defense counsel difficult, it also reduces counsel's effectiveness by forcing changes in defense strategy midtrial." *State v. Evans,* 668 A.2d 1256, 1259 (R.I.1996) (citing *State v. Scurry,* 636 A.2d 719, 725 (R.I.1994)).

Pursuant to Rule 16(a)(1)(5)(8), upon written request, the state is required to provide the accused with "all relevant written or recorded statements or confessions, signed or unsigned, or written summaries of oral statements or confessions made by the defendant, or copies thereof", plus "all results or reports in writing * * * of scientific tests or experiments made in connection with the particular case", and "all relevant recorded testimony before a grand jury of such persons and all written or recorded verbatim statements, signed or unsigned," of witnesses it intends to call at trial.

Recently, in *State v. Oster,* 922 A.2d 151, 164–65 (R.I.2007), we held that in complying with its discovery obligations, the prosecution is not required to go beyond the requirements of Rule 16 by cataloguing or detailing its evidence or refining its answers. However, the state must produce on a timely basis that which the rule requires. This mandate is of particular import with respect to any evidence, direct or circumstantial, of criminal conduct by the accused, whether charged or uncharged, and any statements of defendant, oral or written, or summaries of those statements.

Similar to its federal counterpart, Rule 16(i) provides the trial justice with a range of sanctions for discovery violations. *State v. Musumeci,* 717 A.2d

56, 60 (R.I.1998); *State v. Coelho,* 454 A.2d 241, 244 (R.I.1982). Faced with a violation of defendant's right to discovery, a trial justice "may enter such other order as it deems appropriate[,]" including declaring a mistrial. *See* Rule 16(i); *see also Darcy,* 442 A.2d at 902 (sanctions available to the trial justice for a discovery violation include the declaration of a mistrial). In determining the appropriate sanction for a Rule 16 discovery violation, the trial justice, and this Court on appeal, examine the totality of the circumstances surrounding the alleged discovery violation, including: (1) the reasons for the violation/nondisclosure, (2) the prejudice caused to the aggrieved party, (3) the ability to rectify the prejudice, and (4) all other relevant factors. *Musumeci,* 717 A.2d at 60 (citing *Coelho,* 454 A.2d at 245); *see also State v. Verlaque,* 465 A.2d 207, 213 (R.I.1983) (stating that this Court in reviewing the propriety of the trial court's sanctions, applies this standard).

Because the trial justice is in the best position to determine an appropriate sanction for a Rule 16 violation, this Court reviews those rulings with deference and will not overturn the decision unless it constitutes a clear abuse of discretion. *Coelho,* 454 A.2d at 244–45; *see also State v. Quintal,* 479 A.2d 117, 119 (R.I.1984); *Darcy,* 442 A.2d at 902. The trial justice's discretion in fashioning a remedy for a Rule 16 violation, however, "is limited, bounded by law, and reviewable." *Coelho,* 454 A.2d at 245. We have held that, in imposing a sanction or denying relief, "[a] trial justice's exercise of discretion must be consistent with constitutional and procedural guarantees." *Darcy,* 442 A.2d at 902 (citing *State v. Patriarca,* 112 R.I. 14, 37, 308 A.2d 300, 315 (1973)). Although sanctions are not warranted for unintentional violations unless defendant proves that he was prejudiced, *State v. Pona,* 810

A.2d 245, 250 (R.I.2002), it is equally true that "[i]f no other available discretionary measures can possibly neutralize the harmful effect of improperly admitted evidence, then a mistrial should be declared." *Darcy*, 442 A.2d at 902 (citing *Salimeno v. Barber*, 108 R.I. 705, 709, 279 A.2d 419, 421 (1971)).

### Toxicology Reports

 It is defendant's contention that the state failed to produce three of the four toxicology reports for the cocaine that allegedly was purchased during this investigation and that he prepared for trial assuming that this evidence did not exist.[2] The state argued to the trial justice that these reports were mentioned numerous times in the state's answer and that counsel could have inspected or copied the state's evidence in this case and failed to do so.

Before this Court, the state contends that this issue was not preserved because defendant failed to object until after the reports were admitted into evidence without objection. We deem this argument controlling and are satisfied that this issue was not preserved. *See State v. Wiggins*, 919 A.2d 987, 990 (R.I.2007) (holding that in accordance with our well settled "raise-or-waive" rule, issues not preserved by a specific objection at trial will not be con-

sidered on appeal). Accordingly, we reject this assignment of error.

### Law Enforcement Reports

 The defendant next contends that the state violated Rule 16 by failing to furnish him with FBI reports, known as Form 302 reports (302s),[3] about uncharged drug purchases that the informant made before August 7, 2003, the date of the first offense charged in the criminal information. Detective Douglas testified that before he made his first purchase on August 7, 2003, he had several opportunities to observe Gonzalez dealing drugs. Specifically, Det. Douglas testified that he met "on several occasions with another person [and] with Mr. Gonzalez." However, according to the witness, "[t]hose meetings did not amount to charges so they are not included [in his reports in this case]."[4] Detective Douglas also revealed for the first time during cross-examination that he had prepared reports of these earlier incidents, which were in the custody of the FBI. It is undisputed that these records had not been provided to defendant during discovery, which prompted a motion to strike the witness's testimony and a motion for a mistrial.

To support his motion, defense counsel argued that he unwillingly opened the door

---

**2.** The defendant also makes passing reference to a so-called *Franks* hearing. *See Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) (an accused, faced with a search warrant containing deliberate or reckless falsehoods and omissions of material information is entitled to an evidentiary hearing if certain established criteria are met, including an offer of proof); *see also State v. Verrecchia*, 880 A.2d 89, 99 (R.I.2005) (citing *Franks*). However, he has neither briefed nor argued this issue such as to warrant our attention.

**3.** *See United States v. Torres–Galindo*, 206 F.3d 136, 143 n. 2 (1st Cir.2000) (stating that

a "302 is prepared by an agent after an interview based on the agent's recollection of the interview, that other agents may assist in the preparation of the 302," which is "prepared in anticipation of prosecution"); *United States v. Urciuoli*, 470 F.Supp.2d 109, 111 (D.R.I. 2007) (describing FBI 302 report that summarizes statements by key witness during interviews).

**4.** The record also discloses that there was a second confidential informant, whose existence does not appear in any discovery that the state furnished.

to evidence of uncharged drug offenses because he did not know about the 302s, and that defendant's trial strategy had been adversely affected by the nondisclosure. In reply, the prosecutor stated that she did not find out about the 302s until after trial commenced. The defendant agreed that the nondisclosure was not deliberate. The trial justice, although finding a Rule 16 violation, determined that he was not confronted with deliberate nondisclosure by the prosecution and declined to pass the case. We agree with the finding that the violation was not intentional; it is the remedy that we deem erroneous.

The issue before us is not whether the state committed a discovery violation by failing to furnish defendant with the FBI reports. Instead, the issue is whether a mistrial was required. On the face of this record, we answer this question in the affirmative.

As noted, a trial justice's decision to impose a sanction for a Rule 16 violation will not be set aside absent a clear abuse of discretion. *Musumeci,* 717 A.2d at 60. In the case before us, after the trial justice found a violation, he denied defendant's motion for a mistrial or to strike Det. Douglas's testimony, having concluded that defendant's theory of the case was not undermined by this new information. The trial justice found as follows:

> "Granted [defendant] contends that he has not had a chance to prepare his defense in light of this information but what comes out in the information essentially as far as the activity of the defendant is concerned is consistent with his behavior in August. So I'm not sure that he's harmed that much by learning of it, except that he gets it at this late hour. I think he is entitled to some relief and there should be some kind of

sanction. As I see it, his ability to cross-examine and impeach this witness now in light of what the witness stated on direct is probably as fair a method as any to resolve the problem."

Apparently, this sanction consisted of allowing defendant to cross-examine Det. Douglas with any information in the newly disclosed reports that could impeach his prior testimony, yet bar the state from using the 302s to rehabilitate the witness on redirect. The trial justice believed that in so ruling, he was "completely tying the [s]tate's hands," as the prosecutor put it, but he decided that that was the best way to remedy the violation.

We are of the opinion that defendant was deprived of evidence tending to show prior criminal conduct by the accused, the person whose fate was before the jury. We are not persuaded that any sanction short of a mistrial could have remedied the prejudice in this case. Before this Court, defense counsel argued, as he did in Superior Court, that he would not have asked the witness if, on August 7, 2003, he had approached defendant, "a man you never met in your life" and "he [sold] you drugs" if he had been provided with the 302s and knew that the witness would tell the jury that he and Gonzalez had become acquainted during the course of several drug transactions that occurred before the charged offenses.

On several occasions, this Court has held that a mistrial may be the only appropriate sanction for a discovery violation. *See, e.g., Evans,* 668 A.2d at 1259; *State v. Simpson,* 595 A.2d 803, 808 (R.I.1991); *Darcy,* 442 A.2d at 902. In *Darcy,* 442 A.2d at 902, we declared that the trial justice abused his discretion by failing to grant a mistrial when the state introduced a highly prejudicial statement of the defen-

dant after indicating that it did not intend to use any statements of defendant at trial. We vacated the conviction because, we concluded, the use of the statement in such a circumstance violated defendant's due process rights. *Id.* at 902, 903.

In *Simpson,* 595 A.2d at 806–07, the state failed to disclose that the police had conducted a gunshot residue test on the defendants after they were arrested for murder. This information was not disclosed to the defendants before trial, and the trial justice denied a requested continuance to permit defendants to obtain their own expert. *Id.* at 807. We held that the production of this information in the midst of trial "completely distracted defense counsel from their former strategic plans to present the defense." *Id.* We noted that, although trial lawyers have to adapt to changing circumstances during the trial, "very few trial lawyers are superhuman." *Id.* at 808. We concluded that "[w]hen, because of a failure to furnish discovery on the part of the state, a highly significant piece of information, hitherto unexpected, becomes available and when that information has a potential to alter the course of the defense completely, counsel is reasonably entitled to an effective remedy." *Id.*

We are satisfied that, in the case before us, a mistrial was warranted and a continuance or any other lesser measure could not counterbalance this evidence or remedy the fact that defendant's trial strategy was neutralized. Although the nondisclosure was unintentional, the prejudice was significant. After reviewing the record in this case, we are of the opinion that the trial justice erred in finding that the preju-

dice to defendant was minimal. The jury learned about prior, uncharged criminal conduct of the defendant, and the defense strategy was irreparably altered. In light of defense counsel's representation that, had he known of those reports beforehand, he would not have engaged in that line of questioning, we are satisfied that the refusal to pass the case was a clear abuse of discretion. Accordingly, we vacate the conviction and remand this case for a new trial.[5]

### Incriminatory Statements

■ The defendant also argues that he suffered irreparable harm by the state's failure to turn over evidence of what he characterizes as a confession. Gonzalez contends that the trial justice should have declared a mistrial because he was denied the opportunity to litigate the voluntariness of the "confession" pretrial, and he was not prepared to address this statement during his case in chief.

Rule 16(a)(1) requires the state, upon written request, to provide defendant with "all relevant or recorded statements or confessions, signed or unsigned, or written summaries of oral statements or confessions made by the defendant, or copies thereof[.]" The state's answer referred defendant to an FBI 302 dated August 13, 2003, for any statements of the accused. That report, however, is silent with respect to any admission or statement the accused made about his bedroom, and it certainly did not reflect Det. Douglas's direct examination testimony that Gonzalez "had informed us that that was his bedroom." The only reference to the bedroom that

---

**5.** Because it is undisputed that the discovery violation was unintentional, we discern no double jeopardy issues that would preclude a new trial. *See State v. Casas,* 792 A.2d 737, 739 (R.I.2002) (if the prosecution intentionally goads the defense into asking for a mistrial, the Double Jeopardy Clause precludes a retrial).

the report contained was an indication that Det. Douglas "responded to Gonzalez's bedroom on the second floor of the residence."

We do not agree with defense counsel that this alleged statement amounts to a confession.[6] However, whether oral or written, this is evidence about the defendant and his bedroom—where most of the narcotics were found—that should have been provided to defense counsel. However, standing alone, this violation, although error, was not so prejudicial as to warrant a mistrial, and could have been remedied by an adequate continuance.

## Conclusion

For the reasons stated in this opinion, we vacate the defendant's conviction and remand this case to the Superior Court for a new trial.

---

**6.** We note that Det. Douglas attempted to back out of his direct testimony that defendant "had informed us that that was his bedroom" and testified that as he entered the house, "I said, 'where is your room?' and I just followed him up the stairs." We are not persuaded that this effort accomplished anything—either way, defendant informed the officers that the upstairs bedroom was his—and this statement was not disclosed in discovery.