**Supreme Court**

No. 2015-163-C.A.

(K1/13-51A)

State                                     :

v.                                      :

Ralph Thibedau.                           :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State : No. 2015-163-C.A.
(K1/13-51A)

v. :

Ralph Thibedau. :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.** On October 1, 2014, a jury found Ralph Thibedau (defendant) guilty of three counts of child molestation against his stepdaughter, Stephanie.[1] Claiming that the trial justice committed a number of errors that warrant a reversal of his conviction, he now appeals from the judgment of conviction. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Procedural History

On or about January 2013, Kent County indictment No. K1/13-51A charged defendant with three counts: count 1, first-degree child molestation, to wit, penile to vaginal penetration with a person fourteen years of age or under, between August 1, 2009, and August 31, 2009;[2] count 2, second-degree child molestation, to wit, sexual contact with a person fourteen years of age or younger, between July 1, 2009, and July 31, 2009;[3] and count 3, third-degree child

---

[1] As is our customary practice, we refer to the complaining witness by use of a pseudonym.
[2] "A person is guilty of first degree child molestation sexual assault if he or she engages in sexual penetration with a person fourteen (14) years of age or under." G.L. 1956 § 11-37-8.1.
[3] "A person is guilty of a second degree child molestation sexual assault if he or she engages in sexual contact with another person fourteen (14) years of age or under." Section 11-37-8.3.

molestation, to wit, penile to vaginal penetration with a person over the age of fourteen and under the age of sixteen, between December 1, 2011, and March 31, 2012.[4]

On October 10, 2013, defendant filed a motion to sever the counts against him. The state objected. On December 6, 2013, defendant filed a motion to dismiss on the grounds of duplicity and another motion to sever the counts. On January 23, 2014, defendant's motions were heard and denied in Kent County Superior Court. Prior to trial, defendant also filed a motion in limine to preclude the state from introducing evidence of other uncharged conduct under Rule 404(b) of the Rhode Island Rules of Evidence. A pretrial hearing was held on September 22, 2014, at which Stephanie testified that defendant had sexually abused her "[o]ver a hundred" times during the course of "[t]hree years." At the conclusion of the hearing, the trial justice denied defendant's motion, stating that he was prepared to allow Stephanie to testify to those "instances of other sexual misconduct."

A jury trial commenced the following day. Stephanie testified that, when she was thirteen years old, after the weekend of July 4, 2009, she began smoking cigarettes. She testified that, shortly thereafter, at a family party at her aunt's house in Webster, Massachusetts, defendant offered her his cigarette, handed it to her, and grabbed her breast as he pulled his hand away. Stephanie then testified that "[a]bout a week later," when she was still thirteen years old, defendant called her into his bedroom and told her that he would give her cigarettes if she showed him her breasts. She related that defendant also told her that he wanted "to have sex with [her] and that it could be a secret for [them] to keep." Stephanie stated that she then "lifted [her] shirt a little bit and he pulled it up the rest of the way" and fondled her breasts. He then

---

[4] "A person is guilty of third degree sexual assault if he or she is over the age of eighteen (18) years and engaged in sexual penetration with another person over the age of fourteen (14) years and under the age of consent, sixteen (16) years of age." Section 11-37-6.

gave her cigarettes and she returned to her room. Stephanie testified that, about a week later, defendant called her into his room again and that "[h]e started talking to [her] about sex again and he said that he really wanted to. And he told [her] that [her] first time should be with someone that [she] knew, instead of if [she] had hooked up with someone[.]" She recalled that defendant "started undressing [her] and he bent [her] over his bed and he put his penis in [her] vagina." She said that she "told him to stop because it hurt" but that "he told [her] that it always hurts the first time" and then he ejaculated inside of her, told her to go wash up, and "came back later and threw a pack of cigarettes at [her]."

Stephanie further testified that this abusive relationship continued and that, in exchange for sex, defendant would buy her alcohol, marijuana, or cigarettes. She said that the abuse ended briefly when defendant was in the hospital for approximately two months beginning in June 2011. According to Stephanie, the molestation "stopped for a few months because [defendant] was weak" but started again in March 2012, with defendant again offering her cigarettes for sex. Stephanie testified that, on this occasion, they "were in his room and he laid [her] down on his bed, and he gave [her] oral sex, and then [they] had vaginal sex," after which he gave her a pack of cigarettes and "said that he liked that [they] kept doing it." On direct examination, Stephanie again testified that the sexual acts occurred over one hundred times over the course of three years.[5] According to Stephanie, she never disclosed the sexual nature of her relationship with

---

[5] On cross-examination, Stephanie testified that the sexual acts occurred at least one hundred times during the two-year period between July 2009 and June 2011. However, the line of questioning demonstrates some confusion on Stephanie's part, not inconsistency. The following line of questioning occurred:

"Q   One hundred acts of sexual contact at the very least, with [defendant], is that your testimony?
"A   Yes.
"Q   So if this started in July of 2009; correct?
"A   Yes.

defendant until she told her aunt, Donna Hogan, after her sixteenth birthday. When asked what prompted her to tell Hogan, she responded that she had been failing in school, had gone through a mental breakdown, had cut off almost all of her hair, and was feeling really depressed.

The state next called Hogan to testify for the prosecution. The defendant objected on the ground that Hogan was not listed as a witness in the state's response to discovery and no summary of her testimony had been provided. The trial justice however, rejected defendant's arguments and allowed the witness to testify. Hogan testified that Stephanie had "completely changed," stating that "[s]he went from a great student, to failing out of school. Her appearance changed. Her behavior and attitude changed. She cut off all of her hair. She just completely changed. She was not the girl I had known for the previous [fifteen] years of her life." Hogan also testified that, in June 2012, Stephanie stayed with her for a week and confided information to her that shocked her. Hogan described Stephanie as "[s]haking, crying" and at times unable to speak as she tried to answer Hogan's questions.

The defense presented the following witnesses: Det. Anthony Bettencourt of the West Warwick Police Department, Josephine Thibedau, Jacqueline Walker, Danielle Walker, Cathrine

---

"Q And went until June of 2011; correct?
"A 2012.
"Q No. Well, the first period before [defendant] was in the hospital.
"A Yes.
"Q Right? So that would have been -- this is July of 2009, until June of 2011; correct?
"A Yes.
"Q Okay. And that's basically a two-year period; right?
"A Yes.
"Q So your testimony is, it breaks down into about 50 times a year?
"A Yes."

This confusion is further demonstrated by Stephanie's testimony on redirect examination, where Stephanie responded, "I don't remember" when asked how many times the sexual acts occurred before March 2012.

Thibedau, Heather-Rose Mattias, and Stephanie's sister. The defendant did not testify. Detective Bettencourt testified regarding his investigation of the case at issue. Josephine Thibedau, defendant's wife and Stephanie's mother, testified to her relationship with both defendant and Stephanie, her observance of the relationship between defendant and Stephanie, the daily structure of and routine in the home, her conversation with Stephanie and Hogan regarding Stephanie's disclosure of the allegations giving rise to the charges against defendant, and Stephanie's character for untruthfulness. Stephanie's sister testified to Stephanie's regular schedule and daily household activities. Danielle Walker, Cathrine Thibedau, Heather-Rose Mattias, and Jacqueline Walker all testified as character witnesses for defendant.

At the end of the state's case and again at the close of the evidence, defendant moved for a judgment of acquittal on count 1 on the grounds of duplicity. The trial justice denied his motion. The trial justice then gave the jury instructions and assured the jury that he would be providing them with a complete written copy of the instructions. Defense counsel objected to the jury instructions on the grounds that the Rule 404(b) instruction was "scattershot" and also that the instructions concerning all three counts had "misconstrued the age of the complaining witness."

On October 1, 2014, the jury returned guilty verdicts on all three counts. On December 17, 2014, the trial justice sentenced defendant to twenty-five years to serve on count 1 with "sexual abuse counseling as provided at the prison" and registration as a sex offender upon release. The trial justice imposed a sentence of three years suspended with probation on count 2, and a five-year suspended sentence on count 3, with both suspended terms to be served consecutively to the period of incarceration imposed on count 1 and to each other, with credit for time served. The defendant was also ordered to have no contact with Stephanie or with "any

child fifteen years of age or younger." On January 13, 2015, judgment was entered; defendant timely filed a notice of appeal.

## II

## Discussion

## A

## The Admission of Evidence under Rule 404(b)

The defendant first argues that the trial justice erred when he allowed the admission of evidence of other wrongful acts under Rule 404(b). Specifically, defendant takes issue with the admission of Stephanie's testimony that defendant sexually assaulted her over one hundred times over the course of three years. He contends that the trial justice abused his discretion in admitting the evidence because (1) the evidence "was not reasonably necessary to the [s]tate's case and the [trial justice] failed to make a determination that it was reasonably necessary and not cumulative[,]" (2) the trial justice "failed to delineate a specific exception to which the evidence was relevant and failed to properly instruct the jury as to the limited use for which the evidence was to be considered[,]" (3) "there was no determination made that the [uncharged] conduct was non-remote and similar to" the conduct for which defendant was being tried, and (4) the evidence was more prejudicial than probative. The defendant also argues that the trial justice erred by "giving a 'scattershot' [limiting] instruction to the jury regarding the permissible uses [of the] other-acts evidence in this case." The defendant seeks reversal of his conviction on all counts.

## 1. Standard of Review

"This Court has stated that '[t]he admissibility of evidence is within the sound discretion of the trial justice, and this Court will not interfere with the trial justice's decision unless a clear

abuse of discretion is apparent.'" State v. Rios, 996 A.2d 635, 638 (R.I. 2010) (quoting State v. Gautier, 950 A.2d 400, 411 (R.I. 2008)). "Under Rule 404(b) * * * '[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith.'" State v. Breen, 767 A.2d 50, 57 (R.I. 2001) (quoting Rule 404(b)). "The rule is 'designed to prohibit the introduction of evidence that is only relevant to show that the defendant is a bad person and, therefore, likely to have committed the offense with which he is charged.'" Id. at 57-58 (quoting State v. Clark, 754 A.2d 73, 79 (R.I. 2000)). The rule expressly provides, however, that "such evidence may be admissible 'for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, [or] identity * * *.'" Id. at 58 (quoting State v. Robertson, 740 A.2d 330, 335 (R.I. 1999)). "The decision on whether evidence of other crimes is relevant to a permissible purpose is left to the sound discretion of the trial justice, 'and on appeal we shall only disturb his or her decision when it constitutes an abuse of discretion,' * * * [unless] the evidence was 'both prejudicial and irrelevant.'" Id. (quoting State v. Gabriau, 696 A.2d 290, 294 (R.I. 1997) and State v. Martinez, 651 A.2d 1189, 1194 (R.I. 1994)).

### 2. Analysis

In denying defendant's motion in limine, the trial justice cited State v. Jalette, 119 R.I. 614, 382 A.2d 526 (1978) and, State v. Gomes, 690 A.2d 310 (R.I. 1997), for the proposition that evidence of uncharged sexual offenses committed against a complaining witness "may be introduced to show the accused's lewd disposition or intent towards the [complaining witness]." The Jalette Court, however, was quick to admonish "that this type of evidence should be sparingly used by the prosecution and only when reasonably necessary." Jalette, 119 R.I. at 627, 382 A.2d at 533. This Court further cabined the admissibility of such evidence in Gomes:

"Other-acts evidence should be excluded if it is merely cumulative. * * * Second, the evidence is only to be admitted when the exception is relevant to proving the charges lodged against the defendant. * * * Finally, a trial court should designate with particularity the specific exception to which the evidence is relevant and instruct the jury concerning the limited use for which the evidence is to be considered." Gomes, 690 A.2d at 317.

Here, the trial justice explained that the sexual conduct at issue in the uncharged offenses all involved the same complaining witness (Stephanie) as in the indicted offenses, thereby tending to demonstrate defendant's "incestuous and lustful attitude toward" Stephanie. The trial justice also determined that the evidence displayed a "common thread among all of [the] charged instances, as well as the uncharged instances" whereby defendant employed a system of barter, in which "in exchange for cigarettes, or alcohol, or marijuana, * * * defendant solicited the complaining witness, to participate with her [sic] in sexual activities." Finally, the trial justice determined that the other-acts evidence displayed "a common opportunity, intent, plan, with those acts that [were] charged."

The defendant ascribes error to the trial justice's admission of this evidence for several reasons. First, he argues that the other-acts evidence "was not reasonably necessary to the [s]tate's case and that the [trial justice] failed to make a determination that it was reasonably necessary * * *." He maintains that the evidence is "vague and not specific as to time, place and manner of sexual assault" and is merely cumulative.

Although it is true that the trial justice did not specifically state that the other-acts evidence in this case was "reasonably necessary," we are satisfied that he did not abuse his discretion by admitting the proffered testimony. As he explained in his decision, Stephanie's testimony concerning the more than one hundred instances of sexual misconduct during a three-year period was highly probative of defendant's lewd disposition toward her. Moreover, her

testimony that "[u]sually, the same thing happened every time" was indicative of a common opportunity, intent, and plan with the offenses for which defendant was being tried.

This Court has long recognized that "evidence of other not too remote sex crimes with the particular person concerned in the crime on trial may be introduced to show the accused's 'lewd disposition or * * * intent' towards the person[.]" Jalette, 119 R.I. at 627, 382 A.2d at 533 (quoting People v. Kelley, 424 P.2d 947, 955 (Cal. 1967)). We are well satisfied that, in the case under review, such evidence was both very probative and reasonably necessary. The state's entire case rested primarily upon Stephanie's testimony and more particularly upon her credibility, which was constantly called into question during the trial. Even her own mother testified that Stephanie had a reputation among the members of her extended family as being "more untruthful, than truthful." The admission of the other-acts evidence in this case tended to demonstrate defendant's lustful disposition toward his stepdaughter, as well as "his attitude regarding sexual activity with the victim." Gomes, 690 A.2d at 316.

The defendant next argues that the trial justice erred by "fail[ing] to delineate a specific exception to which the [other-acts] evidence was relevant and fail[ing] to properly instruct the jury as to the limited [purpose] for which the evidence was to be considered." On the contrary, the trial justice explained that most courts allow evidence of other sexual acts against the same victim and that the evidence at issue is probative of defendant's "lewd disposition" toward Stephanie, and shows a common thread of defendant's use of a bartering system of sex for drugs, cigarettes, and alcohol. The trial justice's statements indicate that he determined that the uncharged conduct was interwoven with the charged conduct and necessary to paint a picture of defendant's continued abuse and use of a bartering system, a theory advanced by the state at trial.

We are of the opinion, therefore, that the trial justice did not abuse his discretion in allowing Stephanie to testify about the other-acts evidence under this theory.

The defendant concedes that the trial justice initially stated that he felt the evidence fell under the "lewd disposition" exception; defendant argues, however, that the trial justice mentioned other exceptions as well, thereby abusing his discretion by making his ruling "too broad." At trial, the trial justice explained that his enumeration of the other exceptions contained within Rule 404(b) was intended "to be inclusive, not scattershot[,]" because Stephanie's testimony "has elements of each of those [exceptions] in it."

We agree. In denying defendant's motion in limine, the trial justice stated that the uncharged acts "display[ed] a common opportunity, intent, plan, with those acts that are charged." We discern no error in the trial justice's ruling. The evidence in question, if believed by the jury, bespeaks of a carefully conceived plan to victimize Stephanie and to coerce her compliance with defendant's lustful desires by exploiting his role of authority as her stepfather and enticing her with cigarettes, alcohol, and other favors. It is both probative and permissible under Rule 404(b).

The defendant also argues that the trial justice erred when he gave a "scattershot" limiting instruction to the jury regarding the permissible uses of the other-acts evidence in this case. Specifically, he maintains that the jury instruction concerning the Rule 404(b) evidence was too broad and misled the jury. "We undergo a review of jury instructions on a de novo basis." State v. Martin, 68 A.3d 467, 473 (R.I. 2013) (quoting State v. Lopez, 45 A.3d 1, 22 (R.I. 2012)). "Moreover, we review jury instructions 'to ascertain the manner in which a jury of ordinary intelligent laypeople would have understood them, * * * and we review challenged portions of jury instructions in the context in which they were rendered.'" Id. (quoting State v.

Adefusika, 989 A.2d 467, 475 (R.I. 2010)). As Jalette, 119 R.I. at 627-28, 382 A.2d at 533 made clear, "[i]n its charge the trial court should not take a scatter-shot approach and list all of the exceptions to the exclusionary rule. Rather, it shall designate with particularity the specific exceptions to which the 'other crimes' evidence is relevant and delete from its charge the remaining exceptions."

In the case at bar, the trial justice admonished the jurors that they could not consider the uncharged sexual assaults as evidence to prove character or that defendant had a propensity to commit sexual acts. He further instructed the jurors that they could consider the other acts of wrongful conduct only as evidence of motive, intent, absence of mistake, and defendant's lewd disposition towards Stephanie. We perceive no error in the trial justice's instructions. He properly informed the jury that it could not consider the uncharged acts of sexual misconduct as evidence of defendant's bad character or his propensity to commit sexual acts. He then delineated four specific uses for which the evidence might be considered, all of which are permissible uses under Rule 404(b). We reject defendant's contention that the charge to the jury was so prejudicial to defendant as to warrant a reversal of his conviction.

The defendant also faults the trial justice for failing to make a determination that the other-acts evidence was nonremote and similar to the offenses for which defendant was on trial. The trial justice did make a finding, however, that the uncharged acts were "not too distant from the charge[d] instances, and they do display a common opportunity, intent, plan, with those acts * * * charged." This finding is consistent with Stephanie's testimony that the more than one hundred uncharged acts of sexual misconduct occurred during a three-year period from 2009 to 2012, i.e., the same time frame as the three charged offenses, and that "[u]sually, the same thing happened every time."

- 11 -

Finally, with respect to the Rule 404(b) evidence, defendant argues that it was highly prejudicial and should have been excluded. Rule 403 of the Rhode Island Rules of Evidence provides that even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." We have cautioned, however, that "Rule 403 'must be exercised sparingly,' * * * and 'only when [the] evidence demonstrate[s] mere marginal relevance and enormous unfair prejudice should the trial justice exclude it.'" State v. Virola, 115 A.3d 980, 996 (R.I. 2015) (quoting State v. Brown, 42 A.3d 1239, 1244 (R.I. 2012) and State v. Bishop, 68 A.3d 409, 422 (R.I. 2013)).

As in most matters concerning the admission or exclusion of evidence, the application of Rule 403 in any given circumstance is entrusted to the sound discretion of the trial justice. See Rios, 996 A.2d at 638. Here, we have no cause to disturb the trial justice's ruling. Although Stephanie's testimony that defendant sexually assaulted her more than one hundred times was undoubtedly prejudicial to him, it clearly was more than marginally relevant, for it demonstrated in no uncertain terms defendant's lewd disposition towards Stephanie. We are of the opinion that the trial justice's ruling admitting such evidence into the record was a sustainable exercise of his considerable discretion in evidentiary matters.

## B

### Testimony of Donna Hogan

The defendant next argues that the trial justice erred when he allowed the state to introduce Donna Hogan as a witness in violation of Rule 16 of the Superior Court Rules of

Criminal Procedure.[6] The defendant supports this argument by claiming that Hogan was not listed in the state's response to discovery and no proper summary of Hogan's testimony was given to defendant. The state concedes that it omitted Hogan's name from the list of witnesses in the discovery response. The state also concedes that the police package did not contain any statement given by Hogan herself. However, the state argues that the police packet provided to defendant in discovery was sufficient to put defendant on notice of the state's intention to call Hogan as a witness. Moreover, the state argues that the report of a child protective investigator, which was disclosed to defendant, summarized a conversation with Hogan, which effectively put defendant on notice of Hogan's anticipated testimony.

### 1. Standard of Review

"When this Court reviews a determination of whether a violation of Rule 16 occurred, 'the applicable standard [of review] is narrow: the trial justice must have committed clear error.'" State v. Stravato, 935 A.2d 948, 951 (R.I. 2007) (quoting State v. Briggs, 886 A.2d 735, 755 (R.I. 2005)). "The discovery ruling of a trial justice 'will not be overturned absent a clear abuse of discretion.'" State v. Farley, 962 A.2d 748, 753 (R.I. 2009) (quoting Stravato, 935 A.2d at 951). "However, the trial justice's discretion under Rule 16 is 'not a blank check.'" Id. (quoting Stravato, 935 A.2d at 951). "Rather, it 'is limited, bounded by law, and reviewable.'" Id. (quoting State v. Oster, 922 A.2d 151, 160 (R.I. 2007)).

---

[6] Rule 16(a)(7) of the Superior Court Rules of Criminal Procedure explains that the state is responsible to give the names and addresses of expected witnesses. "[I]n prosecuting a criminal case, the prosecution may not gain a strategic trial benefit 'by violating, whether intentionally or unintentionally, the rules of discovery.'" State v. Gonzalez, 923 A.2d 1282, 1285 (R.I. 2007) (quoting State v. Darcy, 442 A.2d 900, 903 (R.I. 1982)). "Rule 16 * * * is designed to afford the accused notice of the charges, the basis for those charges, and the evidence that the state possesses which led to the prosecution. * * * It is intended to prevent unfair surprise or 'trial by ambush.'" Gonzalez, 923 A.2d at 1285-86 (quoting State v. Small, 735 A.2d 216, 218 (R.I. 1999) (mem.)).

## 2. Analysis

In determining that the state did not violate Rule 16, the trial justice applied the enumerated factors in State v. Coelho, 454 A.2d 241, 245 (R.I. 1982).[7] The four-factor test expressed in Coelho, 454 A.2d at 245, requires the trial court, and this Court on review, to consider: "(1) the reason for nondisclosure, (2) the extent of prejudice to the opposing party, (3) the feasibility of rectifying that prejudice by a continuance, and (4) any other relevant factors." See also State v. Oliveira, 774 A.2d 893, 905 (R.I. 2001). Here, defendant does not argue that the state's failure to list Hogan as a witness was intentional. "When a nondisclosure is unintentional, '[t]he burden of establishing procedural prejudice * * * lies with [the] defendant.'" Oliveira, 774 A.2d at 905 (quoting State v. Squillante, 622 A.2d 474, 478 (R.I. 1993)). "[I]n order '[t]o demonstrate procedural prejudice on appeal, [a] defendant must show that had the information been disclosed, there is a likelihood that trial counsel, * * * could have created a reasonable doubt in the minds of one or more jurors to avoid conviction.'" Id. (quoting State v. Garcia, 643 A.2d 180, 187 (R.I. 1994)). The defendant has failed to make such a showing. The trial justice determined that defendant "was given ample information with which to prepare for

---

[7]At trial, the state called Hogan to the stand to testify as a witness. The defendant objected, arguing that a Rule 16 violation had occurred because defendant's discovery request asked for a written list of all expected witnesses the state expected to call at trial and the state failed to include Hogan's name and a summary of her testimony in its response. The state explained that a criminal information package was provided to defendant, which included a statement from the witness. The defendant argued that the statements were not taken from Hogan, herself, so they were not statements from the witness. The state explained that a statement of Hogan was taken by the DCYF worker, Robert McMahon. The trial court pointed out that defendant received the statement of Hogan, taken by McMahon, through discovery and that the statement is about three-quarters of a page long. The trial court then went on to cite the four-factor rule in Coelho, 454 A.2d at 241 and determined that there was a disclosure. The trial court explained that defendant "was given ample information with which to prepare for cross-examination."

- 14 -

cross-examination"[8] and that a continuance was not necessary as the information was provided on April 2, 2013, a year and a half prior to trial. Further, even if a Rule 16 violation had occurred, "[i]t is within the sound discretion of the trial justice to decide whether to allow a witness to testify whose name was not provided to a party who properly filed for discovery." State v. Ashness, 461 A.2d 659, 673 (R.I. 1983); see also Buckler v. Sinclair Refining Co., 216 N.E.2d 14, 19 (Ill. 1966); Southern Pacific Co. v. Watkins, 435 P.2d 498, 512 (Nev. 1967)).

The defendant also argues that the statement included in the information packet by the state is not sufficient under Rule 16 because the statement was not verbatim.[9] However, Hogan did not testify before a grand jury, and there is no evidence that the state had any verbatim statements by Hogan in its control. Therefore, this Court concludes that the trial court did not err in allowing Hogan to testify.

_____

[8] The police package on which the state relies included the following information regarding Hogan: First, a report by McMahon, which contains a summary of his telephone conversation with Hogan. Next, a West Warwick police narrative prepared by Officer Briand D. Ketcham, Jr., which stated that Stephanie told Hogan she was abused and explained that Stephanie wished to live with Hogan. Also, a report by Det. Anthony Bettencourt expressed that he spoke to Hogan by telephone. Finally, Stephanie's own witness statements expressed her wish to live with Hogan.

[9] Rule 16(a)(8) states:

> "Upon written request by a defendant, the attorney for the State shall permit the defendant to inspect or listen to and copy or photograph any of the following items within the possession, custody, or control of the State, the existence of which is known, or by the exercise of due diligence may become known to the attorney for the State:
> " * * *
> "(8) as to those persons whom the State expects to call as witnesses at the trial, all relevant recorded testimony before a grand jury of such persons and all written or recorded verbatim statements, signed or unsigned, of such persons and, if no such testimony or statement of a witness is in the possession of the State, a summary of the testimony such person is expected to give at the trial[.]"

- 15 -

## C

### The Complaining Witness's Character for Untruthfulness

The defendant also argues that the trial justice erred when he precluded defense counsel from cross-examining Donna Hogan "regarding specific instances of conduct concerning the complaining witness' character for untruthfulness." He maintains that Hogan's testimony "was elicited to bolster [Stephanie's] credibility."

### 1. Standard of Review

"This Court repeatedly has recognized the well-established, constitutionally-protected right of a criminal defendant to effective cross-examination of the prosecution's witnesses." State v. Alston, 47 A.3d 234, 249 (R.I. 2012) (quoting State v. Dubois, 36 A.3d 191, 198 (R.I. 2012)). "This, however, is not an absolute right." Id. "When we review a contention that a defendant's right to cross-examination erroneously was limited by the trial justice, we look to whether the trial justice clearly abused his or her discretion when limiting the scope of the cross-examination." Id. "[W]e will consider the entire colloquy and the full context of the state's examination in making our determination." State v. Rivera, 987 A.2d 887, 907 (R.I. 2010) (quoting State v. Merced, 933 A.2d 172, 175 (R.I. 2007)).

### 2. Analysis

Rule 608(b)(2) of the Rhode Island Rules of Evidence allows a witness to be cross-examined about specific instances of conduct concerning another witness's character for truthfulness or untruthfulness "as to which character the witness being cross-examined has testified."[10] Here, defendant points to no specific testimony on Hogan's direct examination

---

[10] Rule 608(b) of the Rhode Island Rules of Evidence states:
  "Specific Instances of Conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than

regarding Stephanie's character for truthfulness, which would have opened the door to cross-examination regarding specific instances of untruthfulness, as defendant contends. On direct examination, Hogan testified to her observations of Stephanie's demeanor when discussing the abuse and Stephanie's dramatic change from a good student to a child Hogan no longer recognized, who was doing poorly in school and who had cut off her hair. None of this testimony goes to Stephanie's character for truthfulness. Therefore, the trial justice did not abuse his discretion.

## D

**Hogan's Testimony Concerning Complaining Witness's Body Language and Demeanor**

The defendant also argues that the trial justice erred when he allowed Hogan to testify as to the meaning of Stephanie's body language and demeanor. He argues that the testimony was improper opinion evidence, given by a lay witness, in violation of Rule 701 of the Rhode Island Rules of Evidence. Specifically, defendant objects to Hogan's testimony that Stephanie cut her hair and was failing in school; that she felt Stephanie needed someplace safe to live; and that Stephanie was "scared to death." In response to defendant's contentions, the state argues that there was a foundation laid for the testimony because Hogan said she and Stephanie "were very close" and that Hogan's testimony was confined to her own direct observations of Stephanie's behavior and that no conclusory opinions were made by Hogan.

conviction of crime as provided in Rule 609, or, in the discretion of the trial judge, evidence of prior similar false accusations, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."

Even assuming that defendant's objections were properly preserved on Rule 701 grounds, we are satisfied that the trial justice did not abuse his discretion by allowing Hogan to testify about her observations of Stephanie's behaviors. Rule 701 provides:

> "**Opinion Testimony by Lay Witnesses.** — If the witness is not testifying as an expert, the witness' testimony in the form of opinions is limited to those opinions which are (A) rationally based on the perception of the witness and (B) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

We reject defendant's contention that there was no foundation laid or any indication that there was a rational basis for the testimony. The evidence was clear that Hogan enjoyed a close relationship with her niece, such that Stephanie would spend school vacations at Hogan's home as a respite from the abusive situation in her own home. Stephanie testified that Hogan "seemed more of a mother than [her] own mom did."

Moreover, the testimony to which defendant objects is primarily confined to Hogan's direct observations of Stephanie's behavior. The only exception is Hogan's statement that Stephanie was "scared to death." In State v. Ortiz, 609 A.2d 921 (R.I. 1992), this Court laid out a two-part test for the admission of lay opinion testimony: "(1) 'the lay witness must have had an opportunity to view the person or event at issue' and (2) 'the lay witness must be able to give concrete details on which the opinion was founded.'" Id. at 930 (quoting State v. Cohen, 538 A.2d 151, 153 (R.I. 1988)). In Ortiz, a daughter testified to her observation that, during a burglary at which she and her mother were both present, her mother "sounded scared and she just looked at [her] like she was going to die, like something was going to happen." Id. This Court determined that this testimony clearly satisfied both parts of the test because the daughter "was by her mother's side throughout the entire episode, and hence was able to offer details upon which she opined that her mother was in such a high state of anxiety." Id.

Similarly, here, Hogan was present when she observed Stephanie acting in such a manner that led Hogan to conclude that "she was scared to death." Therefore, as in <u>Ortiz</u>, the trial justice here did not err in overruling defendant's objection.

**E**

**Defendant's Motion for Judgment of Acquittal**

The defendant also argues that the trial justice erred when he denied defendant's motion for judgment of acquittal because the evidence regarding the one hundred incidents of child molestation that occurred in the same time frame set out in count one, rendered count one duplicitous.

**1. Standard of review**

"In reviewing the denial of a motion for a judgment of acquittal, we apply the same standard as that applied by the trial justice; namely, we must view the evidence in the light most favorable to the state, * * * giv[e] full credibility to the state's witnesses, and draw therefrom all reasonable inferences consistent with guilt." <u>State v. Maria</u>, 132 A.3d 694, 698 (R.I. 2016) (quoting <u>State v. Gomez</u>, 116 A.3d 216, 224-25 (R.I. 2015)). "The trial justice's denial of the motion should be upheld when 'the totality of the evidence so viewed and the inferences so drawn would justify a reasonable juror in finding a defendant guilty beyond a reasonable doubt * * *.'" <u>Id.</u> (quoting <u>Gomez</u>, 116 A.3d at 225).

**2. Analysis**

An indictment is duplicitous when it joins two or more separate offenses in a single count. <u>State v. Saluter</u>, 715 A.2d 1250, 1253 (R.I. 1998). "If an indictment is duplicitous, a general verdict of guilty will not reveal whether the jury found defendant guilty of only one crime and not the other, or guilty of both." <u>Id.</u> (quoting <u>United States v. Murray</u>, 618 F.2d 892, 896 (2d Cir. 1980)).

In Saluter, 715 A.2d at 1255, seven of nine counts were determined to be duplicitous. This Court differentiated the seven duplicitous counts from the other two counts, which were not duplicitous. Id. This Court explained that, in the nonduplicitous counts, the bill of particulars specified "that one single act was being charged by each count, thereby removing the shadow of any apparent duplicity." Id. at 1254. As to the remaining seven counts, however, there was evidence presented at trial of more than one act during the relevant time frame, upon which the jury could convict. Id.

This Court reasoned that the evidence was duplicitous because "some members of the jury [could be] convinced beyond a reasonable doubt that [one] * * * incident did take place while the remaining members were not adequately convinced of that allegation but instead were convinced beyond a reasonable doubt that [another incident] * * * had occurred," and, so, "the jury could have returned a conviction * * * without the actual jury unanimity required for conviction under our laws." Saluter, 715 A.2d at 1255.

Here, count 1 alleges that "on or about a day and date between the 1st day of August, 2009 and the 31st day of August, 2009, * * * [defendant] did engage in sexual penetration, to wit, penile to vaginal penetration, with [Stephanie], a person fourteen (14) years of age or under * * *." Furthermore, the state's supplemental answer to defendant's request for a bill of particulars states that "[c]ount 1 relate[d] to the first time * * * defendant engaged in penile/ vaginal penetration with [Stephanie] * * * [,] which is believed to have been a day or date around August 2009." Unlike the allegations in Saluter, the allegations here for count 1 specify one incident and the bill of particulars narrowed that incident to "the first time" penetration occurred. See Saluter, 715 A.2d at 1254.

Further, Stephanie testified that, after the weekend of July 4, 2009, she began smoking. She then testified that shortly thereafter, defendant grabbed her breast for the first time. This is the assault alleged in count 2. Stephanie also testified that "[a]bout a week later," defendant fondled her breasts in his room and then, "[a]bout a week after that," he penetrated her for the first time. This penetration is the assault alleged in count 1. However, Stephanie's testimony at trial also points to at least one hundred occasions of sexual contact with defendant. The issue, therefore, is whether some members of the jury could have convicted defendant on count 1 based on one of the more than one hundred uncharged incidents of sexual assault, rather than the assault alleged in count 1.

In Saluter, 715 A.2d at 1254 the complaining witness testified to the specifics of two separate instances of assault, which were both offered at trial as evidence of the charged conduct under count 2. Here, unlike in Saluter, Stephanie's testimony about the more than one hundred acts of uncharged conduct was vague and simply acknowledged that "the same thing happened every time." The testimony regarding the first instance of penetration was the only instance of assault during the period alleged in count 1 that was described with specificity. Therefore, this Court determines that the evidence is not duplicitous and upholds the trial justice's denial of defendant's motion for judgment of acquittal.

**F**

**Jury Instructions**

The defendant also argues that the trial justice erred when he (1) "failed to give an instruction regarding the definition of a person's age where age is an element of the offenses,"

and (2) "failed to include an * * * instruction regarding the proper [use of the Rule 404(b)] evidence in the written instructions given to the jury."[11]

## 1. Standard of Review

"We undergo a review of jury instructions on a de novo basis." Martin, 68 A.3d at 473 (quoting Lopez, 45 A.3d at 22). "It is well settled that this Court 'review[s] [jury] instructions in their entirety,' and 'we will affirm if the instructions adequately cover the law and neither reduce nor shift the state's burden of proof.'" Id. (quoting Lopez, 45 A.3d at 22). "Moreover, we review jury instructions 'to ascertain the manner in which a jury of ordinary intelligent lay people would have understood them, * * * and we review challenged portions of jury instructions in the context in which they were rendered.'" Id. (quoting State v. Adefusika, 989 A.2d 467, 475 (R.I. 2010)). "As long as the trial justice's general charge has fairly covered a requested charge for jury instructions, his refusal to grant the requested charge is not reversible error." Id. (quoting State v. Linde, 876 A.2d 1115, 1128-29 (R.I. 2005)).

## 2. Analysis

The defendant argues that the victim's age is an element of the offense and that the jury may not have properly determined Stephanie's age at the time of the offense without the instruction.[12] The defendant argues that "[a] reasonably intelligent juror cannot be said to know the meaning of a person's age as it pertains to the statutes at issue." The defendant further states that the jury would have needed to find that the charged events occurred within the specified

---

[11] The defendant failed to raise an objection to the trial justice on the second ground, thereby waiving this argument for appeal. See Saluter, 715 A.2d at 1258 (failure to object at trial constitutes waiver of issue on appeal).

[12] This issue was preserved on appeal. After reading the instructions to the jury, describing counts 1-3, defendant objected to the instructions regarding age and requested that the judge clarify the definition of "age" to the jury, arguing that there was inconsistent evidence as to Stephanie's age.

time frames where the victim was the specified ages under the statutes. The defendant, however, provides no case law supporting his assertion and provides no evidence regarding a discrepancy in the state's timeline.

Based on this Court's review of the record, there appears to be no inconsistent evidence concerning Stephanie's age. The jury was told that Stephanie was born on June 22, 1996, that the abuse began in the summer of 2009, shortly after she turned thirteen, and that Stephanie started smoking in July 2009, the same month the defendant fondled her breasts, forming the basis for count 2. About two weeks later, sexual penetration occurred, forming the basis for count 1. Stephanie testified that the abuse began again in March 2012, after the defendant returned from the hospital, and that it ended before her sixteenth birthday, forming the basis for count 3. The state's timeline appears clear. Further, there do not appear to be any issues regarding whether an incident occurred on or directly before or after Stephanie's birthday, which may confuse the jury.[13] Therefore, the definition of age was unnecessary.

### III

### Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be returned to the Superior Court.

---

[13] See State v. Jordan, 528 A.2d 731, 734 (R.I. 1987).

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Ralph Thibedau. |
| **Case Number** | No. 2015-163-C.A. (K1/13-51A) |
| **Date Opinion Filed** | April 18, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Kent County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Allen P. Rubine |
| **Attorney(s) on Appeal** | For State:<br><br>Jane M. McSoley<br>Department of Attorney General<br><br>For Defendant:<br><br>Stefanie DiMaio-Larivee, Esq. |